(No. 64085.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. BENNIE WILLIAMS, Appellant.

*Opinion filed September 19, 1990.—Rehearing denied*
*November 30, 1990.*

MILLER, J., dissenting.

Paul P. Biebel, Jr., and Randolph N. Stone, Public Defenders, of Chicago (Kyle Public Wesendorf, Assistant Public Defender, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley and Cecil A. Partee, State's Attorneys, of Chicago (Terence M. Madsen, Assistant At-

torney General, of Chicago, and Inge Fryklund, Renee Goldfarb and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Bennie Williams, was convicted of murder and armed robbery. (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a), 18—2(a).) Defendant waived a jury for the sentencing phase of his trial. Upon finding defendant eligible for the death penalty, weighing aggravating and mitigating factors, and determining that there were no mitigating factors sufficient to preclude imposition of the death penalty, the trial judge sentenced defendant to death. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(h).) The sentence was stayed pending direct appeal to this court. Ill. Const. 1970, art. VI, §4(b); Ill. Rev. Stat. 1981, ch. 38, par. 9—1(i); 107 Ill. 2d Rules 603, 609(a).

On procedural and substantive grounds, defendant contends that the trial judge erred in holding that certain evidence obtained as a result of his custodial interrogation was attenuated from the taint of his unlawful arrest. See *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.

Defendant's first procedural contention is that the trial judge erred in considering the suppression question's attenuation component more than a year after an earlier judge had already entered an order suppressing the evidence, and when the State had neither completed an appeal from nor sought reconsideration of that order.

Defendant's second procedural contention is that the trial judge erred in basing a finding of attenuation on evidence that was not new and had been before the original judge for consideration.

Defendant's substantive contention is that the trial judge erred in finding that attenuation had occurred.

Defendant raises numerous other issues, but we reverse and remand on the first procedural issue.

## FACTS

### I. The Crimes and Defendant's Interrogation

On the night of May 28-29, 1983, shortly after midnight, 17-year-old Tony Long was fatally shot and robbed of a radio he was carrying. On the evening of May 30, police received an anonymous telephone call implicating the 18-year-old defendant by name. On the basis of the call, their records on defendant, and descriptions by crime witnesses of a suspect's height, police called at defendant's home at about 11 p.m. and asked him to accompany them to the police station. There, they gave him *Miranda* warnings and questioned him at length.

Defendant initially denied knowing anything about the crimes. When asked, he agreed to take a lie detector test, which could not be scheduled until the next day at the earliest. He remained at the police station overnight and until the evening of May 31, when he was taken to another police station for the test. Upon completing the test, he was told by the examiner that his answers were suspect, whereupon he replied that it was because he actually knew who had committed the crimes.

Upon being returned to the first police station, he was given another set of *Miranda* warnings and informed that he had failed the test. He then told investigating officers that he had seen two persons named Kuykendoll and Gito in the act of shooting and robbing the victim. He said that afterward he had gone to the apartment of Ruthie Jackson and there had told Loneill Davis and his and Davis' "girlfriends," Leatha Erving and Kelly Adams, what he had seen.

While police searched for Kuykendoll and Gito, defendant remained for a second consecutive night in the police station. On the following day, June 1, defendant's friend Leatha Erving arrived at the police station and, at about 5 p.m., told investigating officers that, at about the time of the crimes, defendant and Davis had left her company and that, when they later returned, defendant was carrying a large radio.

.  At about 9 p.m. on June 1, police gave defendant another set of *Miranda* warnings and informed him of Erving's statement, whereupon he told them that, after he and Davis had left Erving's company, Davis disappeared, then later reappeared carrying the radio, after which they returned to the house where Erving was waiting.

Later in the evening of June 1, police received a telephone call from Davis, met him at a certain location, and escorted him and his friend Kelly Adams to the police station. There, at about 12:30 a.m. on June 2, Davis was given *Miranda* warnings and gave the police a statement. According to the statement, Davis had been with defendant when defendant had said that he had to have the victim's radio. Davis told the police that defendant had then shot and robbed the victim during a struggle.

Police thereupon informed defendant of Davis' statement, and defendant confessed to the crimes, some 50 hours after the police first encountered him. Defendant also told the police that he had taken the gun and radio to the apartment of Debra Glenn. Shortly afterward, police called at Glenn's apartment and recovered a radio. Later the same day, police again called at Glenn's apartment in search of a gun, and she and Patricia Barnes took police to another dwelling some distance away, where the police took possession of the gun.

## II. The Suppression Motion, Hearing, and Order

The case against defendant first appeared on the call of Judge John H. McCollom (the original judge). Defense counsel filed a "Motion To Quash Arrest and Suppress Confessions, Admissions and Statements and Physical Evidence." Besides seeking to quash defendant's arrest, the motion requested that the court "suppress from introduction into evidence" the following:

"A. Physical evidence discovered directly and indirectly as a result of the arrest and detention.

B. Statements, utterances, reports of gestures and responses by Defendant during the detention following the arrest.

C. Witnesses who viewed Defendant during the detention following the arrest, as well as witnesses discovered as a result of the arrest, provided that Defendant has the right to call said witnesses to testify for the purpose of protecting his Constitutional Rights.

D. Photographs, fingerprints, and other information, the product of the processing of Defendant following his arrest, and the fruits thereof.

E. All other knowledge and the fruits thereof, witnesses, statements, whether written, oral or gestural and physical evidence which is the direct and indirect product of the arrest."

After June 5, July 5, and August 2, 1984, hearings on the motion, the original judge ruled on September 20, 1984, that defendant had been seized and detained in police custody without probable cause, adding: "Therefore, the Court grants the Defendant's motion to quash arrest and allows the Defendant's motion to suppress confessions, admissions, statements and physical evidence."

Most of the parties' argument on defendant's motion before the original judge concerned whether defendant had been seized prior to the time he confessed, not whether defendant's statements had been attenuated

from the taint of any unlawful arrest. However, at one point during defense counsel's citation to the appellate court's opinion in *People v. Townes* (1981), 94 Ill. App. 3d 850, *aff'd* (1982), 91 Ill. 2d 32, counsel quoted from the appellate court's discussion of the attenuation issue that had been developed in *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248, and *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254. (See *Townes,* 94 Ill. App. 3d at 853.) At another point, the prosecutor referred to the appearance of Leatha Erving at the police station as having been "a totally independent factor" that led the police to realize that defendant was not a mere witness but was a suspect. Thus, the original judge heard at least brief argument related to attenuation before making his suppression ruling.

On October 19, 1984, the State filed a notice of appeal from the original judge's suppression ruling. However, on November 2, 1984, the State informed the court that it would not prosecute the appeal, and on December 19, 1984, the State informed the court that on November 21, 1984, the appellate court had granted its motion to dismiss its appeal and that the appellate court's mandate was being awaited. On May 29 and June 17, 1985, after the mandate had apparently been received, the State informed judges sitting in the original judge's stead that the State intended to argue before the original judge that certain items of evidence suppressed by him would have been inevitably discovered and should be admitted. On July 1, 1985, appearing before Judge Robert Boharic (the trial judge), who had succeeded the original judge because of reassignment, the State advised the court that it had been considering filing a motion for reconsideration of the suppression motion on which the original judge had ruled but that the State

was not "at the present time" moving for reconsideration.

### III. The Attenuation Motion, Hearing, and Order

On November 12, 1985, the State, through an assistant State's Attorney who had recently been assigned to the trial judge's courtroom, filed a motion to reconsider the issue of probable cause for defendant's arrest or, in the alternative, to conduct a hearing on attenuation. On November 13, 1985, the trial judge heard argument on the State's motion and stated that, while he was inclined not to reopen the issue of probable cause on which the original judge had ruled, he was inclined to allow the State to offer additional evidence on "attenuation or independent basis" under *Brown*, *Dunaway*, and other cases, because the trial judge did not "believe that Judge [McCollom] specifically ruled on this precise point."

Defense counsel argued that, under *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, the original judge could not properly have based a suppression order solely on the primary illegality of defendant's arrest but was also obliged to consider a second question: whether the suppressed evidence was obtained by exploiting that illegality, rather than by some other means so distinguishable from such exploitation as to attenuate the evidence from the taint of the unlawful arrest. Defense counsel argued that the State therefore had simply failed to raise and thus had waived the attenuation issue, rather than the original judge's having failed to consider it. Defense counsel also argued that all the facts alleged in the State's pending motion for an attenuation hearing were reflected in the transcript of the first suppression hearing and therefore must have been considered by the original judge. Defense counsel also pointed out that the State could have appealed or moved to reconsider the original judge's sup-

pression order and that the State did file a notice of appeal but then chose to procure dismissal of the appeal, thus abandoning it.

The trial judge expressed doubt that, at a suppression hearing, a judge such as the original judge would have reason to know whether certain physical evidence might have had "a source other than the defendant's statements that flowed from the arrest," or to know whether there were any question about "[attenuation] or independent basis or inevitability during the course of the usual Motion to Suppress."

The State argued that the original judge had not addressed the attenuation issue and that he had not addressed "which evidence was suppressed and which evidence was not suppressed."

After considering the State's motion, defendant's written response, and the parties' oral arguments, the trial judge cited case law on the power of a court to correct its errors, as well as *People v. Althide* (1979), 71 Ill. App. 3d 963, to hold that the original judge's suppression order had not decided such questions as independent basis, inevitability, or attenuation and that the State should be granted a hearing on "attenuation and independent basis" in order to show by clear and convincing evidence that there was "an independent basis or inevitability or attenuation." The trial judge also held that the original judge had not decided whether defendant's statements were voluntary for purposes of the fifth and sixth amendments; accordingly, the trial judge ruled that at the hearing the defense could also present evidence concerning unresolved issues that might benefit defendant, including raising the issue of voluntariness. The trial judge ruled that, if the defense presented evidence showing involuntariness, the State would have the burden of showing by clear and convincing evidence that defendant's statements were voluntary.

After conducting the hearing that he had granted in response to the State's motion, the trial judge found that the State had proved by clear and convincing evidence that defendant's statements were voluntary for purposes of the fifth and sixth amendments. Applying tests for attenuation derived from *Brown v. Illinois*, the trial judge also found that the State had proved by clear and convincing evidence that all statements made by defendant after being confronted with Davis' statement were attenuated from defendant's unlawful arrest, and the trial judge ordered that they would not be suppressed. However, the trial judge ordered that defendant's statements made prior to being confronted with Davis' statement would be suppressed.

As for physical evidence, the trial judge ordered that all items in defendant's possession when he was taken into police custody would be suppressed. By contrast, the trial judge found that the State had proved by clear and convincing evidence that the gun and the radio were obtained through an independent source purged of the taint of defendant's unlawful arrest, and the trial judge ordered that these items of evidence would not be suppressed.

Finally, the trial judge found that the State had proved by clear and convincing evidence that "there is an independent basis and attenuation" with respect to all witnesses, and the trial judge ordered that their testimony would not be suppressed.

The matter was then set for trial, defendant was convicted, and this appeal followed.

## ANALYSIS

Defendant contends that, because the original judge in his case had entered an order holding his arrest unlawful for lack of probable cause and suppressing evidence derived from his custodial interrogation, and be-

cause the State procured dismissal of its appeal from that order (see *People v. Taylor* (1971), 50 Ill. 2d 136, 140; *People v. McBride* (1983), 114 Ill. App. 3d 75, 80; *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 648; *People v. Circella* (1972), 6 Ill. App. 3d 214, 216) and never sought reconsideration of the order (see *People v. Heil* (1978), 71 Ill. 2d 458, 461; *People v. Wagner* (1981), 100 Ill. App. 3d 1051, 1053), the order operated as what defendant terms the law of the case, binding the State and the trial judge. In effect, defendant contends that the suppression order must be presumed to have taken into account the evidence on which the State later relied in support of its eventual attenuation argument and that therefore the trial judge improperly reopened the already decided suppression issue in order to reconsider the attenuation question.

The State responds, as did the trial judge, that, although the original judge's order disposed of the then pending issue whether certain evidence should be suppressed, the court entered the order without considering all the pertinent legal questions. On the implicit ground that a trial court is generally permitted to change its ruling on a pretrial suppression motion at any time before final judgment (see *People v. Caballero* (1984), 102 Ill. 2d 23, 35-36; *People v. Braden* (1966), 34 Ill. 2d 516, 520; *People v. Fox* (1925), 319 Ill. 606, 609 (cases not cited to us by the parties, though the trial court relied in part on *Braden*)), the State contends that the trial judge properly heard evidence and argument on issues left unaddressed by the original judge and then decided those issues for the first time when holding that attenuation had occurred.

In short, the parties dispute whether the "issue" or "question" decided by the original judge's suppression order was indeed the general suppression question or merely the question of the unlawfulness of defendant's

arrest. If the lawfulness of the arrest was all that was decided, then other matters pertinent to suppression—such as the question of attenuation—arguably remained to be litigated and thus may later have been properly considered by the trial judge. But if the overall suppression question is what must be viewed as having been decided, then former-adjudication principles arguably precluded relitigation of any part of that question, unless a court's authority to change its ruling on a suppression motion would allow a contrary result.

So stated, the parties' controversy would seem to present an interesting clash of legal rules, springing from a metaphysical or semantic dispute about decision-making. However, in Illinois, the rules are harmonized, at least in the case of an order that was not merely interlocutory but was appealable when entered: If an order is appealable when entered, and no timely reconsideration is obtained from the judge who entered it or from that judge's successor, a dissatisfied party's remedy is appeal, not relitigation before a second coordinate judge. This principle has been repeatedly recognized by our court. It applies *a fortiori* to the present cause, in which the State not only could have appealed but did appeal the original suppression order, even though the appeal was later abandoned. See *People v. DeJesus* (1989), 127 Ill. 2d 486; *Balciunas v. Duff* (1983), 94 Ill. 2d 176; *People ex rel. Kelly, Ketting, Furth, Inc. v. Epstein* (1974), 61 Ill. 2d 229; *People v. Taylor* (1971), 50 Ill. 2d 136.

This harmonizing principle is not vitiated by the fact that a new legal argument may occur to a litigant after it is too late to appeal. Not only does case law reject the notion of making an exception for such tardiness, but logic dictates that, if parties were permitted to reopen the subject matter of a decided order each time a new legal theory came to mind, litigation would seemingly have no end. Or, in the words of a trial judge in an anal-

ogous context, as quoted in *People v. Shlensky* (1983), 118 Ill. App. 3d 243, 246:

> " 'A judgment is broader and deeper than the State's conception of a judgment. *** It is a finding that the State has not prevailed in the litigation. *** The State cannot thereafter retrace its steps, prowl back into the litigation, pull out separate issues not referred to by a Judge in observations made at the time of rendering judgment and upon these selected issues build a new indictment.' "

For the reasons just summarized and on which we now elaborate, we hold that the trial judge improperly reopened an issue that had already been adjudicated.

## I. The Taylor Rule

The foundation of our rationale today lies in our decisions in *People v. Taylor* (1971), 50 Ill. 2d 136, and its precursors. The parties have argued this phase of the present cause in terms of collateral estoppel, *res judicata*, and law of the case, yet none of these legal doctrines controls here, although the issue in *Taylor* has occasionally been described in terms of one or another of them. (See *People v. McBride* (1983), 114 Ill. App. 3d 75, 80 ("collateral estoppel"); *People v. Taylor* (1970), 124 Ill. App. 2d 268, 274, *rev'd* (1971), 50 Ill. 2d 136 (circuit and appellate courts used *res judicata* label); *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 648 ("law of the case").) Regardless of rubric, *Taylor*'s procedural rule is simple: A suppression order may be an appealable order under our Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)), and, if it is, the State must either appeal or not. Except for seeking timely reconsideration by the same or a successor judge of the court in which the order was entered (see *People v. Heil* (1978), 71 Ill. 2d 458, 461-62), the State "cannot now have [the] order reviewed by another trial judge" and "cannot [before such a judge] retry the

issues therein decided" (*Taylor*, 50 Ill. 2d at 140 (citing *People ex rel. MacMillian v. Napoli* (1966), 35 Ill. 2d 80, and *People v. Quintana* (1967), 36 Ill. 2d 369)).

The *Taylor* rule represented no new departure in the law. For example, much earlier than *Taylor*, we announced a similar principle in *Harris v. Chicago House Wrecking Co.* (1924), 314 Ill. 500, a case in which an earlier judge's order reinstating a suit had never been presented to a reviewing court but was held by another judge in the same case, more than five years later, to have been entered without jurisdiction. We held that it was the later judge who lacked jurisdiction to review the earlier judge's order, which, because of not having been reviewed by writ of error, appeal, or *certiorari*, bound the defendant, "no matter how erroneous it may have been at the time it was entered." The earlier judge's error "could only be corrected by a review of the order," not by the later order of a judge of coordinate authority. *Harris*, 314 Ill. at 507-08.

Of course, the *Taylor* rule's bare reference to "the issues therein decided" might be thought to leave open the question already outlined, *i.e.*, whether the original judge's order decided the suppression issue or merely the subsidiary unlawful-arrest issue. However, *Taylor* also clearly stated that it is the earlier "order" itself that cannot be "reviewed by another trial judge" (*Taylor*, 50 Ill. 2d at 140), thus going far toward obviating any ambiguity in the reference to "issues therein decided." In any event, none of our *Taylor* line of cases limited the *Taylor* rule only to those subsidiary issues that may actually have been considered by a judge whose appealable order a judge of coordinate authority later undertakes to modify. In the present cause, the order was to quash an arrest and suppress evidence, period. Each of the *Taylor* line of cases speaks of an order

itself, not merely of issues upon which the order may or may not have turned.

For example, in *People v. Steskal* (1973), 55 Ill. 2d 157, 161, we cited *Taylor* in observing that the prior grant of a suppression motion could not be relitigated. In *People v. Kent* (1972), 54 Ill. 2d 161, 164, we cited both *Taylor* and its precursor, *People v. Quintana* (1967), 36 Ill. 2d 369, as establishing that the State is bound by an appealable pretrial order unless the State appeals and that it is improper for a second trial judge to redetermine whether the order was correct. In *People v. Holland* (1974), 56 Ill. 2d 318, the State was the party contending that denial of a pretrial suppression motion should bind the later trial judge; but we rejected the State's contention, pointing out that *Taylor*'s "clearly distinguishable" rule applies to grants, not denials, of such a motion, only the grant being appealable interlocutorily (see 107 Ill. 2d R. 604(a)(1)). *Holland*, 56 Ill. 2d at 321.

In *People ex rel. Kelly, Ketting, Furth, Inc. v. Epstein* (1974), 61 Ill. 2d 229, 230-31, which cited *inter alia* the *Taylor* precursor, *People ex rel. MacMillian v. Napoli* (1966), 35 Ill. 2d 80, we held it to be "entirely clear" that defendants dissatisfied with restraining orders should appeal rather than seek a countervailing injunction from another judge; we said that the second judge should have declined to act; and we noted that "[r]eview of the orders of one judge by another judge of the same court in the same case is neither consistent with the orderly administration of justice nor with our judicial system." And in *Balciunas v. Duff* (1983), 94 Ill. 2d 176, we distinguished an unappealable interlocutory discovery order, entered by one judge and later modified by another, from the appealable orders governed by the *Taylor* rule. See also *People v. Baker* (1988), 177 Ill.

App. 3d 342, 344, 346; *City of Rolling Meadows v. Kohlberg* (1980), 83 Ill. App. 3d 10, 14.

The *Taylor* rule is thus a discrete rule of Illinois procedure, independent of such related doctrines as collateral estoppel, law of the case, or even *res judicata*. Of these three doctrines, the *Taylor* rule most resembles *res judicata*. Under *res judicata*, if the parties and the cause of action are the same as in an earlier action in which a final judgment on the merits was rendered, the earlier judgment binds the parties with regard to all issues that were *or could have been* raised in the earlier proceeding. (*People v. DeJesus* (1989), 127 Ill. 2d 486, 493; *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251.) Because the *Taylor* rule likewise applies only when the parties and the cause of action remain the same and an appealable order has been entered earlier, the rule's resemblance to *res judicata* provides further support for treating the *Taylor* rule as applying to prior orders *per se* (that is, as applying to all issues that were or could have been raised earlier), not as applying simply to such issues as can be shown to have been actually litigated in the prior proceedings.

By contrast, invoking the law of the case might still not preclude reconsideration of an earlier judge's order if the facts before the court changed or error or injustice were manifest (see, *e.g.*, *People ex rel. Parker v. Whealan* (1938), 370 Ill. 243, 244; *People v. McCarty* (1973), 11 Ill. App. 3d 421, 422; *Redfield v. Continental Casualty Corp.* (7th Cir. 1987), 818 F.2d 596, 605; 14 Ill. L. & Prac. *Courts* §74 (1968); but see *People v. Douglas* (1981), 100 Ill. App. 3d 181), and attempting to invoke collateral estoppel would be beside the point if, as here, the parties and the cause of action (a claim for suppression of evidence) were identical for each judge involved (see *Telegraph Savings & Loan Association v. Schilling* (1984), 105 Ill. 2d 166, 177-78; *Housing Authority v.*

*YMCA* (1984), 101 Ill. 2d 246, 251-52). Moreover, unlike the *Taylor* rule and *res judicata*, the application of collateral estoppel (see, *e.g.*, *Housing Authority*, 101 Ill. 2d at 251-52) or law of the case (see, *e.g.*, *Connett v. City of Jerseyville* (7th Cir. 1940), 110 F.2d 1015, 1018) would be limited to the precise factual or legal issues actually litigated and decided when a prior order was entered.

However, despite the close resemblance between *res judicata* and the *Taylor* rule, the latter has its own roots in case law, statutory provisions, and court rules regarding the appealability of otherwise interlocutory orders such as suppression orders; the *Taylor* rule is not doctrinally identical with *res judicata*. For example, the *Taylor* rule applies only when later proceedings in the same case are involved; *res judicata* is applicable to later proceedings in a separate case. (See *Housing Authority*, 101 Ill. 2d at 251.) In addition, for purposes of the *Taylor* rule, when the State filed its notice of appeal the circuit court immediately lost jurisdiction, and the order bound both the parties and the circuit court; not even the judge who entered it, much less another judge of the same court, had authority to modify it thereafter except (if at all) upon reacquiring jurisdiction. Yet, for purposes of the *res judicata* rule as applied in some States (but historically not in Illinois or in many other jurisdictions), once the State's notice of appeal to the appellate court was filed in the present cause, the original judge's suppression order would not have been regarded as binding until sustained on appeal or until the appeal had been dismissed. (See Annot., §5, 9 A.L.R.2d 994 (1950); *Brown v. Schintz* (1903), 203 Ill. 136, 139; *People ex rel. Arns v. Rickert* (1896), 159 Ill. 496, 499; Restatement (Second) of Judgments §13, comment *g*; §16, comment *a* (1982).) (Even though the *Taylor* rule's closest analogue is *res judicata* doctrine, we judge that the rule admits of one comparison to law-of-the-case doctrine: As with law

of the case, if the facts before the court change materially, the court should not be bound by its former interlocutory ruling but can correct itself in light of the newly presented facts. In order to prevent this exception from swallowing the rule, the new evidence should not be of a nature that with due diligence could have been presented earlier. Thus, the exception that we recognize has no application to the present cause.)

Unless a notice of appeal is actually filed, the *Taylor* rule has been held not to apply to an appealable order until the time has elapsed during which a litigant is permitted to request reconsideration of the order by the same or a successor judge of the court in which it was entered. (*People v. Heil* (1978), 71 Ill. 2d 458, 461-62.) This is because statutory and judicial policy favors giving a circuit court "the opportunity to reconsider final appealable judgments and orders within 30 days of their entry" as long as no notice of appeal has yet been filed. (*Heil*, 71 Ill. 2d at 461.) Nothing in the *Taylor* line of cases supports forbidding a party "to seek correction of the alleged error by means of a motion *timely* filed in the circuit court" (emphasis added) (*Heil*, 71 Ill. 2d at 461-62), even though the party was entitled to appeal immediately after the order was entered. However, the *Heil* situation is not present here. The State did perfect an appeal here, and nearly a year had elapsed between dismissal of the State's appeal and the time when the State sought the trial judge's consideration of the attenuation argument. Therefore, *Heil*'s refinement of the *Taylor* rule does not validate the second judge's considering or deciding the attenuation question.

Meanwhile, our recent opinion in *People v. DeJesus* (1989), 127 Ill. 2d 486, involving a second judge's order that undid the effect of an earlier judge's denial of a State motion to permit prosecution of a juvenile under criminal laws, would seem already to have clarified the

*Taylor* rule sufficiently. In *DeJesus*, although the matter before the second judge was presented within 30 days after the first judge's order, the second judge was not the first judge's successor in the *Heil* sense. Rather, the second judge was a criminal court judge who had originally presided at the juvenile defendant's trial on charges of first-degree murder and armed robbery. (See Ill. Rev. Stat. 1987, ch. 37, par. 805—4(6)(a).) Because a jury had acquitted the defendant of the murder charge even though it convicted her of armed robbery, proceedings were statutorily required to continue under juvenile rather than criminal laws. (See Ill. Rev. Stat. 1987, ch. 37, par. 805—4(6)(c).) Thus, a juvenile court judge was assigned to hear the State's motion to permit further proceedings under the criminal laws notwithstanding the contrary statutory directive. After the juvenile court judge dismissed the State's motion, the State presented other motions to the original trial judge, who granted them and proceeded to sentence the defendant under the criminal rather than the juvenile laws.

Though *DeJesus* was decided after the present cause had been submitted, neither party has since requested leave to cite it as additional authority. We stated there:

"[W]here a ruling is *immediately* appealable, an aggrieved party's remedy is to appeal, and the second judge should decline to act. ***

\* \* \*

*** [The first judge] advised the State that her order was final and appealable. The State should have taken an appeal if it believed the ruling was incorrect. ***

*** [The first judge's] order terminated the criminal prosecution prior to final judgment and was therefore appealable. [The second judge] should have declined to act." (Emphasis in original.) *DeJesus*, 127 Ill. 2d at 494-98 (citing *Balciunas*, 94 Ill. 2d 176, *Epstein*, 61 Ill. 2d 229, and *Napoli*, 35 Ill. 2d 80).

Significantly, before the second judge in *DeJesus*, the State raised issues of constitutionality and statutory construction that it contended were not shown to have been presented to the first judge in the case. (*DeJesus*, 127 Ill. 2d at 491-92.) The defense replied that the State had waived pursuit of "other matters," such as its constitutional challenge, that might have been but were not raised before the first judge. (*DeJesus*, 127 Ill. 2d at 491.) On review, we stated our belief that the second judge was aware of the "scope" of the first judge's order. (*DeJesus*, 127 Ill. 2d at 498.) However, rather than rely on this presumed awareness by the second judge or explore the scope question further, we based our holding on the simple fact that the first judge's order constituted "a judicial pronouncement *** that the criminal prosecution had terminated." (*DeJesus*, 127 Ill. 2d at 494.) Therefore, we said, the second judge should not have ruled on the State's subsequent motions seeking further criminal proceedings. *DeJesus*, 127 Ill. 2d at 494, 498.

Though we found "judge-shopping" to have occurred in *DeJesus* (127 Ill. 2d at 497) and we make no such finding in the present cause, judge-shopping was merely an aggravating, not a decisive, factor. We specifically stated in *DeJesus*:

> "The addition of a constitutional challenge in proceedings before [the second judge] does not alter our conclusion that the same claim was presented before both judges. The constitutional challenge should have been presented to [the first judge] and the failure to do so resulted in waiver." (*DeJesus*, 127 Ill. 2d at 498.)

Like the constitutional challenge in *DeJesus*, the attenuation argument in the present cause should have been presented to the original judge. It cannot be detached from the suppression question so as to form a separate "issue" exempted from the force of the *Taylor* rule, any more than if *res judicata* itself were applicable. There-

fore, the trial judge erred procedurally in permitting the State to argue the attenuation question belatedly and in ruling on the question.

## II. Attenuation and Ceccolini

Though we dispose of this appeal on the procedural grounds just discussed, we deem noteworthy one element in the State's substantive arguments regarding attenuation.

As one basis for finding that defendant's confession was attenuated from the taint of his unlawful arrest, the State contends that, even though Erving's name first came to police attention because of statements by defendant, and even though Davis was implicated by both Erving and defendant, the police would eventually have discovered Erving and Davis independently in any investigation of defendant, since they were known associates of his. The State cites *United States v. Ceccolini* (1978), 435 U.S. 268, 55 L. Ed. 2d 268, 98 S. Ct. 1054, for its discussion of why a willing witness should be allowed to testify at trial even if the witness was first found as a result of a defendant's statements following an unlawful arrest, as long as the witness' testimony is not compelled by exploiting the defendant's tainted statements. (*Ceccolini*, 435 U.S. at 274-79, 55 L. Ed. 2d at 276-79, 98 S. Ct. at 1059-62.) *Ceccolini* also said that even putative defendants should be permitted to testify if there is no exploitation of their statements to compel the testimony. *Ceccolini*, 435 U.S. at 276-77, 55 L. Ed. 2d at 277, 98 S. Ct. at 1060-61.

The flaw in the State's *Ceccolini* analysis is that *Ceccolini* dealt with the jurisprudential policy reasons for permitting live testimony at trial by a willing witness, not with whether the witness' supposed willingness or the inevitability of the witness' discovery can constitute an intervening circumstance as far as admissibility of the

defendant's own confession is concerned. *Ceccolini* drew specific attention to this distinction. (*Ceccolini*, 435 U.S. at 277-79, 55 L. Ed. 2d at 277-78, 98 S. Ct. at 1061.) Conceivably, *Ceccolini* would permit the elicitation of trial testimony by Erving or Davis despite their having been initially named by defendant in an arguably tainted statement, but *Ceccolini* is inadequate to support an attenuation argument as to defendant's confession itself. See *Ceccolini*, 435 U.S. at 278, 55 L. Ed. 2d at 278, 98 S. Ct. at 1061, quoting *Michigan v. Tucker* (1974), 417 U.S. 433, 450-51, 41 L. Ed. 2d 182, 196-97, 94 S. Ct. 2357, 2367.

We need not actually decide whether the trial judge was substantively correct in finding attenuation. Today we simply hold that the trial judge improperly heard evidence and argument on the attenuation issue after the original judge's suppression order had already effectively decided it. Thus, we reverse defendant's convictions, vacate his sentences and the trial judge's attenuation order, and remand this cause to the circuit court of Cook County for further proceedings consistent with this opinion.

However, the *Taylor* rule and our holding in this cause, as involving appellate procedure, do not act as limitations on our supervisory power. Given the likelihood of a new trial, and pursuant to our supervisory power, we vacate the original judge's suppression order insofar as it may have prohibited the introduction into evidence of testimony of witnesses to events other than defendant's detention, his custodial interrogation, and the recovery of evidence procured as a result of that interrogation. We direct that, at any retrial of defendant, the circuit court shall conduct a hearing in accordance with the principles of *Ceccolini* to determine whether any proposed testimony by such witnesses was sufficiently attenuated from defendant's unlawful arrest so

as to be admissible. In all other respects, the original judge's suppression order shall govern any such retrial.

In view of our disposition of this cause, we need not address defendant's other allegations of error.

*Suppression order vacated in part;*
*attenuation order and sentences vacated;*
*judgment reversed; cause remanded*
*with directions.*

JUSTICE MILLER, dissenting:

The majority holds that the circuit court, having granted the defendant's motion to suppress evidence on the ground that the defendant was taken into custody without probable cause, lacked authority to consider later whether any of the evidence ordered suppressed was nonetheless attenuated from the primary taint and hence admissible at trial. I do not agree with the majority's decision that the circuit court's consideration of that question was unauthorized, and therefore I respectfully dissent.

The majority notes that the parties are not in accord on what issues were determined by the original judge in granting the defendant's suppression motion and, further, that the parties dispute whether the original ruling implicitly determined the attenuation issue later raised by the State. The majority believes that resolution of those questions is not necessary, however, because under Illinois practice, as represented by the decision in *People v. Taylor* (1971), 50 Ill. 2d 136, a party aggrieved by an order that is appealable when it is entered must either appeal the ruling or seek reconsideration in a timely manner. The majority concludes that the State's failure in the present case to follow either course in the wake of the original judge's order must mean that the State could not later request a ruling on the separate question whether any of the evidence was nonetheless admissible

because attenuated from the primary taint. (138 Ill. 2d at 388.) I do not agree that the dispute in the present case may be so easily avoided, or so readily rephrased. The majority's formulation begs the question, for it assumes that the scope of the original judge's ruling necessarily included the attenuation issue raised by the State. Although the majority opinion later declares that the *Taylor* rule, like the doctrine of *res judicata*, applies both to issues that were actually presented in the original proceeding and to issues that could have been presented in the original proceeding (138 Ill. 2d at 392), the majority fails to answer why the attenuation question raised by the State, and considered by the trial judge, must also fall within that rule. In my view, we must now decide whether the State waived consideration of the attenuation question by failing to present the issue at the time of the original hearing, or on reconsideration before the original judge.

The defendant moved to quash his arrest and to suppress evidence on the grounds that the arrest was made without probable cause and without a warrant, that his statements to authorities were products of physical and mental coercion, and that he made those statements without having received the warnings required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Although the original judge seemingly granted, in its entirety, the defendant's motion to quash the arrest and suppress evidence, the original judge decided only that the defendant was arrested without probable cause. The State filed a notice of appeal from the original judge's order but soon decided to abandon the appeal, and the cause eventually returned to the circuit court. The State subsequently requested a second hearing, at issue here, in relation to the defendant's suppression motion. The State sought to raise two distinct issues in the new hearing: first, whether the original

judge erred in ruling that the defendant's arrest was made without probable cause, and, second, assuming the correctness of that ruling, whether any of the evidence obtained following the defendant's arrest was nonetheless admissible because it was attenuated from the primary taint.

The trial judge refused to reconsider the original judge's ruling that the defendant's arrest was made without probable cause. Although the trial judge questioned the soundness of that finding, he thought that *People v. Taylor* (1971), 50 Ill. 2d 136, barred him from reconsidering that particular issue. The trial judge did not believe, however, that he was similarly prevented from considering the second issue raised by the State: whether any of the evidence obtained following the defendant's illegal arrest was attenuated from the primary taint and hence admissible. The trial judge noted that the original judge's ruling did not contain any findings with respect to the attenuation issue, and the trial judge observed that a question of attenuation generally does not arise until there is a determination that a constitutional violation occurred. The trial judge concluded that he was authorized to consider the State's attenuation argument. Following an evidentiary hearing, the trial judge ruled that the confrontation of the defendant with codefendant Davis' statement implicating the defendant in the crimes served to attenuate the taint generated by the illegal arrest. Accordingly, the trial judge ruled that statements made and evidence seized following that time were admissible in evidence. The trial judge also determined two additional issues that had been raised in the defendant's suppression motion but had not been ruled on by the original judge. The trial judge concluded that all the defendant's statements were uncoerced and, in addition, that the defendant gave

the statements following the receipt of *Miranda* warnings.

In the present appeal, the State makes no challenge to the original judge's ruling that the defendant's arrest was illegal, nor does the State question the trial judge's refusal to reconsider that ruling. Rather, the State contends only that the attenuation issue was a separate matter with respect to which the original judge made no ruling and that the trial judge therefore possessed authority to consider the question later.

I would conclude that the trial judge, consistent with *Taylor,* had authority to consider the State's contention that evidence obtained following the defendant's arrest was attenuated from that taint and hence admissible at trial. Attenuation properly becomes an issue only if the court finds an underlying illegality. Here, the defendant moved to quash his arrest and suppress evidence on several different grounds. The original judge based his ruling on only one of the grounds asserted in the motion, finding that the defendant's arrest was made without probable cause. The attenuation question would not arise until the court determined that the defendant had sustained his burden of persuasion on that issue (see Ill. Rev. Stat. 1981, ch. 38, par. 114—12(b)). Although the subject of attenuation was touched on briefly by the parties in the course of their arguments before the original judge, the issue was not raised at that time, and the original judge, though he made detailed findings, did not render a finding on that particular matter. While it may have been better practice for the prosecution to have requested, at that time, consideration of the attenuation issue, I do not believe that the State's failure to seek such a ruling at the conclusion of the hearing, or within 30 days thereafter, prevented the trial judge later from considering the attenuation question. The original judge did not address the attenuation question in his findings, and

it did not become a live issue until there was a ruling in the defendant's favor on his motion to quash his arrest and to suppress evidence.

One additional point appearing in the majority opinion merits brief comment. In straining to distinguish the *Taylor* rule from the doctrine of law of the case, the majority undermines portions of its own analysis. The majority states that the *Taylor* rule does not fit within the rubric of the law-of-the-case doctrine because "invoking the law of the case might still not preclude reconsideration of an earlier judge's order if the facts before the court changed or error or injustice were manifest." (138 Ill. 2d at 392.) Apparently, the majority believes that new evidence or the existence of great error or injustice would not warrant reconsideration of an earlier ruling on a motion to suppress evidence. But those are circumstances in which it has been held a defendant may obtain reconsideration of the denial of his suppression motion. (See *People v. Nelson* (1981), 97 Ill. App. 3d 964, 967-68.) Indeed, that statement is contradicted by the majority's later acknowledgment that the *Taylor* rule "admits of one comparison to law-of-the-case doctrine" because the presentation of new evidence may, under either principle, warrant reconsideration of an earlier ruling. 138 Ill. 2d at 393-94.

In sum, I do not agree with the majority's holding that the trial judge lacked authority to consider the attenuation question raised by the State following the abandonment of its appeal, and I would therefore consider in the present appeal the challenges raised by the defendant to the trial judge's ruling on that issue. For that reason, I respectfully dissent.