SECOND DIVISION

December 28, 2001

No.  1-99-2633

)

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

   ) Circuit Court of

Plaintiff-Appellee, ) Cook County.

) 

)

)

GERALD LAWSON, ) Honorable

) Michael Toomin,

Defendant-Appellant. ) Judge Presiding.

)

JUSTICE GORDON delivered the opinion of the court: 

Defendant Gerald Lawson (defendant) appeals from his conviction for armed robbery and his sentence to imprisonment for natural life in the Illinois Department of Corrections by the circuit court of Cook County.  On appeal, defendant argues that the circuit court improperly admitted evidence at trial that was previously excluded in a suppression order and that the identification testimony presented by the State was insufficient for conviction.  We reverse. 

BACKGROUND

Only facts essential to the understanding of the issues in this appeal follow.  Other facts of this case, which are adequately set out in our prior opinion disposing of the first appeal in this case (
People v. Lawson
, 298 Ill. App. 3d 997, 700 N.E.2d 125 (1998)), need not be repeated here. 

Defendant was arrested on February 17, 1996.  In March of 1996 he was charged with, 
inter alia
, armed robbery (720 ILCS 5/18-2(a) (West 1994)), for an armed robbery and shooting that occurred on February 17, 1996, at a dry cleaning store at 6445 Cottage Grove in the City of Chicago.  On May 6, 1997, defendant made a motion to "quash arrest and 
suppress
 evidence" asking that various items of physical evidence, statements and identifications related to his arrest be suppressed, which Judge Holt (the first judge) granted in its totality on the grounds that defendant had been arrested without probable cause.  The relevant text of the motion to suppress is set out in full below.  The State appealed the suppression order, but only challenged the standard that Judge Holt applied in finding a lack of probable cause and did not challenge the scope of the suppression order.  The order was affirmed on appeal.  

After the case was remanded and reassigned to Judge Toomin (the second judge), the State filed a petition for a hearing on attenuation.  This petition was denied.  The court did agree, however, to hold an independent basis hearing.  After the hearing, the second judge found that an independent basis existed for the suppressed in-court identification testimony.  The second judge ruled that the State could present testimony regarding postarrest lineup identifications of defendant; an identification made at the hospital by a witness from a photograph taken of defendant after the arrest; and testimony of a police officer of events leading up to defendant's arrest.  

At trial, Gloria Jones first testified for the State.  Jones stated that she was at work at Reid's Cleaners on the date in question.  At about 1:45 in the afternoon a "customer," wearing a face mask and a cap, came into the store carrying a sweater.  As Jones wrote a receipt for the sweater, the customer grabbed her by the shoulder, pointed a gun at her head, and dragged her to the back of the store.  Subsequently, Arthur Hearns, an employee of the barber shop next door, came into the cleaners.  The offender told Hearns that he would kill him and Jones if he came in any farther.  Hearns moved farther into the store and was shot by the offender.  Hearns then knocked the offender down and the offender fled.  Jones made an in-court identification of defendant.  On cross-examination, she admitted that she did not see a moustache on defendant during the incident. 

Arthur Hearns next testified for the State.  On the date in question, Hearns was working at the barber shop next door to Reid's cleaners.  At around 1:45 in the afternoon, one of the other employees of the barber shop told Hearns she heard someone yelling for help next door.  Hearns then went next door and saw that someone was holding Jones.  The offender told him to stay back, but Hearns moved towards him and was shot in the leg.  Hearns then snatched the offender's mask off and threw the offender to the floor. Hearns testified that the offender fled.  Hearns testified that he was then taken to the hospital. Hearns testified that the police visited him at the hospital on February 17 and showed him an array of six photographs from which he identified defendant's photograph.  Hearns then made an in-court identification of defendant.  On cross-examination Hearns admitted that he had not noticed if the offender had a mustache.  

Linda Boyd next testified for the State.  She stated that she followed Hearns outside the barber shop as he went next door to investigate.  She did not enter the dry cleaners.  She saw defendant with a gun and identified defendant at trial.

Detective Robert Flood next testified for the State.  Flood stated that on the evening of February 17, he conducted a lineup which Jones viewed.  Jones identified defendant in the lineup.

Officer Darrel Akins next testified for the State.  Akins averred that around 1:45 in the afternoon on the date in question he responded to a radio call indicating that there was a robbery in progress and proceeded to Reid's dry cleaners.  At that location he spoke to Boyd and Jones, who gave a description of the offender and told him in what direction the offender had fled.  Atkins and his partner subsequently apprehended defendant near the scene of the robbery.

Gerald Lawson (defendant) testified in his own defense.  He denied being involved in the robbery at issue.  He averred that at the time in question he was in a pool hall in the 6400 block of South Cottage Grove.  He stated that he had a mustache in February of 1996 and that his facial hair is visible in the lineup photograph.  On redirect he testified that after he left the pool hall he headed home on 69th
 Street and King Drive.  On re-cross-examination the State asked, over defense objection, if defendant told Flood that he was on his way to the store when he was arrested and defendant averred that he never made such a statement.  Defendant also denied telling Flood that he had witnesses whom he could not name who saw him at the pool hall at the time in question.  

Defendant was subsequently convicted of armed robbery by a jury.  He was sentenced to natural life in prison.  This appeal followed.  

ANALYSIS

Defendant first argues that the second judge erred in admitting the testimony of Officer Akins regarding defendant's arrest.  Defendant contends that this testimony was barred by his motion to suppress, which was granted by the first judge.  Defendant states that the decision on the motion to suppress was not subject to reconsideration by the second judge pursuant to our supreme court's decision in 
People v. Williams
, 138 Ill. 2d 377, 563 N.E.2d 385 (1990).  The State argues that the testimony of which defendant complains does not address the arrest itself, but only the events leading up to the arrest, and that therefore this testimony is not covered by the motion to suppress.  We agree with the State.

The motion to suppress made by defendant sought to suppress the following:

"A.  Physical evidence discovered directly and indirectly as a result of the arrest and detention;

B.   Statements, utterances, reports of gestures and responses by petitioner [defendant] during the detention following the arrest;

C.   Any in-court or out[-]of[-]court identification of petitioner[;]

D.   Witnesses who viewed petitioner during the detention following the arrest, as well as witnesses discovered as a result of the arrest, provided that petitioner has the right to call said witnessers to testify for the purposes of protecting his Constitutional Rights;

E.   Photographs, fingerprints, and other information, the product of the processing of petitioner following his arrest, and the fruits thereof;

F.   All other knowledge and the fruits thereof; witnesses, statements, whether written, oral or gestural and physical evidence which is the direct and indirect product of the arrest."

This motion was granted in its entirety by the first judge.

Defendant first contends that this order was violated when the second judge permitted Officer Akins to testify regarding the arrest.  Akins testified that he responded to a radio call of a robbery in progress.  Upon arriving on the scene of the robbery, he spoke with Boyd and Jones, who described the offender and stated the direction in which he had run.  Akins then returned to his car and subsequently found defendant, who matched the description of the offender.  Akins, however, did not testify that he arrested or apprehended defendant.  Because Akins did not discuss this point, all of his testimony relates to events that occurred before the arrest.  Thus that testimony does not violate the order to suppress, since that order does not purport to suppress testimony regarding pre-arrest events.

Defendant next contends that the second judge violated the suppression order by allowing testimony regarding a postarrest lineup, testimony regarding photographs of defendant taken after his arrest and in-court identification testimony by witnesses who viewed defendant while defendant was in custody after his arrest.  Defendant further contends that the hearing on the attenuation and independent basis issues held by the second judge was an improper review of the first judge's suppression order pursuant to
 
People v. Williams
, 138 Ill. 2d 377, 563 N.E.2d 385 (1990), and thus the second judge did not have the authority to admit the evidence in question.  Since the State did not raise the attenuation and independent basis issues at the hearing on the motion to suppress, the State cannot raise them after the order to suppress is final and has been affirmed on appeal.  We agree.

The question as to whether an order granting a motion to suppress may be overturned by a successor judge after the State has declined to appeal the suppression order was confronted by our supreme court in 
People v. Taylor
, 50 Ill. 2d 136, 277 N.E.2d 878 (1971).  The 
Taylor
 court held that a suppression order entered at a preliminary hearing is appealable and if the State does not appeal, the State cannot then have the order reviewed by another trial judge.  In the facts of 
Taylor
, the defendant was arrested on November 12, 1968, after a search of his apartment pursuant to a warrant and a quantity of narcotics was seized.  On December 2, 1968, a trial court judge granted the defendant's motion to quash the arrest and suppress the evidence seized.  Subsequently on December 16, 1968, the grand jury of Cook County indicted the defendant.  The indictment involved the same charges and evidence as the previous proceeding.  After the indictment the defendant again moved to suppress the evidence seized pursuant to the search warrant on the grounds that no appeal had been taken from the first suppression order and it was thus binding on the trial court.  The circuit court agreed, but the appellate court reversed.

On further appeal our supreme court affirmed the judgment of the circuit court.  The State contended that pursuant to section 109-3 of the Code of Civil Procedure (Ill. Rev. Stat. 1967, ch. 38, par. 109-3) "the order of suppression [entered] at the preliminary hearing was not an appealable order and was not binding on the trial court."  Section 109-3 provided that an order of suppression allowed at a preliminary hearing was nonfinal and "shall not in any manner bar, affect or be determinative in any subsequent proceedings."  Ill. Rev. Stat. 1967, ch. 38, par. 109-3.  Our supreme court held that section 109-3 was unconstitutional, however, because Article VI of the Constitution of 1870 vested our supreme court with the "sole authority to provide by rule for appeals to the appellate court from other than final judgments."  
Taylor
, 50 Ill. 2d at 140, 277 N.E.2d at 881.  The court then held that the suppression order granted at the preliminary hearing was appealable.  Since the State had not elected to appeal, the State could not then "have [the] order reviewed by another trial judge."  
Taylor
, 50 Ill. 2d at 140, 277 N.E.2d at 881.  

The more recent supreme court opinion in 
People v. Williams
, 138 Ill. 2d 377, 389-90, 563 N.E.2d 385, 390 (1990), is squarely on point.  In 
Williams
 our supreme court applied the holding in 
Taylor
 to a factual situation virtually indistinguishable from the case at bar.  There the defendant filed a motion to quash his arrest (for murder) and suppress, 
inter alia
, evidence and statements obtained as a result of the arrest.  Judge McCollom subsequently granted the motion.  Although the State filed a notice of appeal, it later dismissed the appeal and did not pursue it further.  There, as in this case, after an interval of several months, the State moved to conduct a hearing on attenuation before a new judge.  The new judge held an attenuation hearing and found that there was attenuation and an independent basis for some of the suppressed evidence, which was subsequently admitted at trial, where the defendant was convicted.  

On appeal, our supreme court held that the attenuation hearing was improper.  The court stated that once a suppression order is entered, it may be reconsidered or appealed, but that under 
People v. Taylor
, 50 Ill. 2d 136, 277 N.E.2d 878 (1971), a second hearing on the merits may not be held.  The 
Williams
 court stated:

"A suppression order may be an appealable order under our Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)), and, if it is, the State must either appeal or not.  Except for seeking timely reconsideration by the same or a successor judge of the court in which the order was entered [citation], the State cannot now have [the] order reviewed by another trial judge and cannot before such a judge retry the issues therein decided [citations]."  138 Ill. 2d at 389-90, 563 N.E.2d at 390.

Similarly, in the case at bar, at the initial suppression hearing the court granted defendant's motion to suppress and that ruling was affirmed on appeal.  After the case was remanded, the State petitioned for the first time and to a different trial court judge for an attenuation hearing.  The court disallowed the attenuation hearing, but granted an independent basis hearing.  Following the holding of our supreme court in 
Williams
, however, we must conclude that in view of the prior suppression order and its affirmation on appeal the granting of the independent basis hearing was improper.  As our supreme court noted in 
Williams
, under the 
Taylor
 rule once a suppression order has been entered, although it may be reheard and then appealed, the issue of suppression may not be revisited.  
Williams
, 138 Ill. 2d at 390-91, 563 N.E.2d at 391.

In an attempt to distinguish 
Williams
, the State contends that
 attenuation issues were briefly raised at the initial suppression hearing in 
Williams
.  The State thus argues that since neither attenuation nor independent basis was raised at the initial suppression hearing in the case at bar, the independent basis hearing before the second judge was proper in that it was not necessarily precluded by the prior suppression order.  We disagree.  We first note that the question of attenuation was raised in 
Williams
 only obliquely when defense counsel quoted from an appellate court opinion's discussion of attenuation issues and when the prosecutor made reference to the existence of a "totally independent factor" that led the police to realize the defendant was a suspect.  
Williams
, 138 Ill. 2d at 382-83, 563 N.E.2d at 387.  However, the prosecutor in 
Williams
 never made a request for any attenuation or independent basis hearing during the suppression proceedings.  More overridingly, however, even a cursory reading of 
Williams
 indicates that in any event this distinction would be irrelevant in ascertaining the propriety of the attenuation hearing before the second judge.  The 
Williams
 court clearly held that it was immaterial whether attenuation issues were discussed at the first hearing on the suppression issue.  The court stated:

"In any event, none of our 
Taylor
 line of cases limited the 
Taylor
 rule only to those subsidiary issues that may actually have been considered by a judge whose appealable order a judge of coordinate authority later undertakes to modify.  In the present cause, the order was to quash an arrest and suppress evidence, period.  Each of the 
Taylor
 line of cases speaks of an order itself, not merely of issues upon which the order may or may not have turned."  138 Ill. 2d at 390-91, 563 N.E.2d at 391.

Defendant next argues that the trial court erred in allowing his postarrest statements to be admitted at trial.  The State contends that the postarrest statements were properly admitted because they were used solely to impeach defendant's testimony at trial.  While defendant admits that suppressed evidence may be used to impeach a defense witness, he argues that the statement that the prosecution seeks to impeach with such evidence must be an assertion elicited on direct examination. 

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so.  But that privilege cannot be construed to include the right to commit perjury."  
Harris v. New York
, 401 U.S. 222, 225, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643, 645 
(1971).  "[W]hen defendants testify, they must testify truthfully or suffer the consequences."  
United States v. Havens
, 446 U.S. 620, 626, 64 L. Ed. 2d 559, 565-66, 100 S. Ct. 1912, 1916 
(1980).  A "defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt."  
Havens
, 446 U.S. at 627-28, 64 L. Ed. 2d at 566, 100 S. Ct. at 1917
.  "The State may impeach either the defendant's statements during direct examination, or answers to questions on cross-examination where the questions are plainly within the scope of the direct examination.  [Citation.]  But where the cross-examination has too tenuous a connection to any subject opened on direct examination, impeachment with tainted evidence will not be permitted."  
People v. Frank Williams
, 205 Ill. App. 3d 1001, 1006-7, 564 N.E.2d 168, 171-72 (1990).  The "State may not impeach a defendant merely as a subterfuge to place otherwise inadmissible evidence before the jury."  
Frank Williams
, 205 Ill. App. 3d at 1005, 564 N.E.2d at 171.  See also 
People v. James
, 123 Ill. 2d 523, 537, 528 N.E.2d 723, 729 (1988) ("The difference between the assertion by the defense witness and that contained in the suppressed statement must be more than a mere inconsistency").

Defendant first contends that the State improperly asked on re-cross-examination if at about 5:30 on February 17 (the time of the arrest) defendant told Detective Flood that he was on the way to the store.  In response to this question, defendant denied making the alleged statement to Detective Flood.  We find that this question was proper impeachment of defendant's statement on redirect examination that he was "heading home" at the time of the crime.  
Frank Williams
, 205 Ill. App. 3d at 1006-7, 564 N.E.2d at 171-72.  Likewise, the State's cross-examination regarding statements defendant made to an assistant State's Attorney on this same topic have the same legitimacy.  Defendant also contends that the State improperly questioned Flood in rebuttal regarding this statement.  The questioning of Flood was also proper as it supported the prior impeachment of defendant's statement that he was heading home at the time of the crime.  M. Graham, Cleary & Graham's Handbook of Illinois Evidence §607.2, at 371-72 (6th
 ed. 1994) ("If the matter is not collateral, extrinsic evidence may be introduced disputing the witness's denial of the truth of the facts asserted in the cross-examiner's impeaching question"); 
People v. Columbo
, 118 Ill. App. 3d 882, 966, 455 N.E.2d 733, 793-94 (1983).  Moreover, we find that the difference between the statements made by defendant on direct that he was heading home at the time in question and the statement he made to Detective Flood that he was heading to the store was more than a mere inconsistency.  
Cf.
 
James
, 123 Ill. 2d at 537, 528 N.E.2d at 729.  These statements directly contradict each other on the critical issue of defendant's location at the time in question.

Defendant next contends that the State improperly questioned him on cross-examination as to whether he told Flood that he "had witnesses" who saw him at the pool hall but that he "couldn't name them."  There is no dispute that this question is not related to any specific statements that defendant made on direct examination and thus does not constitute impeachment of any portion of defendant's testimony on direct examination.  Likewise, defendant contends that the question asked by the State on cross-examination as to whether defendant told an assistant State's Attorney that he had cuts on his hand from jumping over a fence was improper.  The defendant correctly urges that since there is no dispute that this question was not the subject of testimony on direct examination, it was improper to raise it on cross-examination as an exception to the exclusionary rule. 

The State contends, however, that these questions were proper because, although they did not impeach specific testimony given by defendant on direct, they sought to impeach his credibility generally.  This contention is incorrectly premised.  A suppressed statement may be employed "for purposes of impeachment as a 
prior inconsistent statement
 of the defendant."  (Emphasis added.)  M. Graham, Cleary & Graham's Handbook of Illinois Evidence §613.5, at 517 (6th
 ed. 1994).  Expanding this rule to allow the use of suppressed statements for general impeachment of a defendant's credibility, rather than merely to allow such statements to establish inconsistency with statements made or facts asserted on direct examination, would ignore the policy underlying the impeachment exception to the exclusionary rule.  The rationale for this exception is to prevent exploitation of an order of suppression to facilitate perjurious testimony by a defendant.  See 
Michigan v. Harvey
, 494 U.S. 344, 351, 108 L. Ed. 2d 293, 303, 110 S. Ct. 1176, 1180 (1990) (a defendant may not "turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths"); 
Walder v. United States
, 347 U.S. 62, 65, 98 L. Ed. 503, 507, 74 S. Ct. 354, 356 (1954)("there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility").  To expand the impeachment exception to the exclusionary rule as the State suggests would allow the State to introduce suppressed evidence if it has any relevancy in disproving the defendant's general credibility as a witness.  If the use of suppressed evidence is permitted to impeach credibility generally, as opposed to proving that inconsistent statements were made, such evidence will always relate to the prior testimony of that witness insofar as it would purport to shake his general credibility.  This, in effect, would render meaningless the restrictions imposed by our supreme court and the Supreme Court of the United States limiting the use of suppressed evidence against a defendant on cross-examination to situations where it relates to that defendant's testimony on direct examination since general credibility would always relate to testimony of the defendant whether on direct examination or otherwise.  See, 
Harris
, 401 U.S. at 225, 28 L. Ed. 2d at 4, 91 S. Ct. at 646
;  
Havens
, 446 U.S. at 626, 64 L. Ed. 2d at 565-66, 100 S. Ct. at 1916
; 
Williams
, 205 Ill. App. 3d at 1005, 564 N.E.2d at 171.

Finally, defendant argues that his conviction should be reversed outright because the identification evidence presented at trial was insufficient.  We need not address this issue, however, because we have already found sufficient reason to reverse defendant's conviction.

For the reasons discussed above, we reverse the judgment of the circuit court of Cook County and remand this cause for a new trial or other proceedings not inconsistent with this opinion.

Reversed; new trial ordered; cause remanded.

CAHILL and McBRIDE, JJ., concur.