2020 IL App (1st) 200377
Nos. 1-20-0377, 1-20-0399 & 1-20-0491 Cons.
Opinion filed December 21, 2020

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* K.S. and K.S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | Nos. 18 JA 701 and 19 JA 605 |
| | ) | Appeal No. 1-20-0491 |
| v. | ) | |
| | ) | Honorable |
| David S., | ) | Patricia M. Martin, |
| | ) | Judge, presiding. |
| Respondent-Appellant). | ) | |
| | ) | |
| *In re* A.W., a Minor | ) | |
| | ) | |
| | ) | Appeal from the Circuit Court |
| (The People of the State of Illinois, | ) | of Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | No. 18 JA 808 |
| | ) | Appeal No. 1-20-0399 |
| v. | ) | |
| | ) | Honorable Patricia M. Martin, |
| Persure W., | ) | Judge, presiding. |
| | ) | |
| Respondent-Appellant). | ) | |
| | ) | |
| *In re* N.W., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| (The People of the State of Illinois, | ) | |
| | | No. 18 JA 918 |

Nos. 1-20-0377, 1-20-0399 & 1-20-0491 Cons.

|                              |   |                              |
|------------------------------|---|------------------------------|
| Petitioner-Appellee,         | ) |                              |
|                              | ) | Appeal No. 1-20-0377         |
| v.                           | ) |                              |
|                              | ) | Honorable Patricia M. Martin,|
| Romona J.,                   | ) | Judge, presiding.            |
|                              | ) |                              |
| Respondent-Appellant).       | ) |                              |
|                              | ) |                              |
|                              | ) |                              |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Walker and Justice Pierce concurred in the judgment and opinion.

## OPINION

¶ 1    We consider a consolidated appeal from three child protection cases in which (i) the trial court vacated the appointment of the Cook County Public Defender's Office (Public Defender's Office or Public Defender) for a parent and (ii) all stakeholders involved disagree with the propriety of the trial court's vacatur of the Public Defender's appointment. We disagree as well. We find no law supporting the trial court's conclusion that the assigned assistant public defenders were inadequately trained to litigate in the Early Childhood Court (ECC) or had rendered inadequate or erratic representation. Actually, the opposite appears in the record. We reverse the trial court's order disqualifying the Public Defender and remand for further proceedings (appeal Nos. 1-20-0377 & 1-20-0399). Because David S. has acquiesced in the appointment of alternative counsel, we dismiss his appeal (appeal No. 1-20-0491).

¶ 2                              Background

¶ 3                    *Facts Common to All Respondents-Appellees*

¶ 4    This consolidated appeal involves three cases from the child protection court in which the trial court vacated the appointment of the Public Defender representing parents of minor children.

The merits of those cases are not at issue. All three cases were assigned to a specialized court known as the ECC. Nothing in the record expressly sets out the structure of the ECC. We can, however, piece together some basics.

¶ 5     The ECC works on a "Team Model," with the role of counsel being something in addition to advocacy: a partner in a team working toward permanency for the minor children. In addition to the Public Defender's Office, which accepts appointment on child protection cases, a roll of bar attorneys qualify for appointment once specially trained on the EEC structure and procedure. The Department of Children and Family Services designed the training in conjunction with "experts around the nation on Early Childhood Development."

¶ 6     According to the trial court, the presiding judge of the child protection division, ECC training is usually offered on an annual basis and lasts two days. An affidavit submitted by one of the bar counsel indicates that periodic meetings and follow-up training sessions occur regularly. The trial court explained that training focuses less on the legal aspects of the ECC and more on early childhood development and the ability of lawyers to communicate aspects of that development to their clients. The trial court expressed frustration that the Public Defender's Office had recently assigned a new slate of assistants to ECC cases. It appears, though this is far from clear, that she had spoken with the Public Defender about training and the importance of continuity of representation.

¶ 7     *Respondent-Appellant Romona J. (Appeal No. 1-20-0377)*

¶ 8     In January 2020, the parties appeared before the trial judge for a hearing. Before anyone's counsel addressed the court, the trial court decided "to remove all new [Public Defenders] coming on [her] cases that are pending." Assistant Public Defender Reuben Adolf, who had been assigned

to represent Romona, objected, informing the court that he had been "working on [the case] for several months, speaking with [his] clients, reviewing records, attending child and family team meetings, participating in them." Adolf agreed he had not received the specialized ECC training the trial court referred to but explained he had "a formal training" within the Public Defender's Office about the ECC and had spoken to the attorneys previously assigned to his cases. He argued he had spent substantial time preparing and, at this stage, appointing another attorney would leave his clients with counsel not as well prepared as he.

¶ 9 The trial court admitted that Adolf sounded like "a wonderful person and a well-organized attorney" but nonetheless objected on the ground that the Public Defender's Office was "taking the attitude that new lawyers can come into baby court" and be prepared without any formal training in early childhood interventions. The court found the Public Defender's Office had "reneged" on an understanding that attorneys would not be "hopscotching all over" disrupting the continuity of their cases.

¶ 10 The State took no position on the removal of the Public Defender's Office but asked that any decision the court made account for the delay of permanency for any of the involved children. The Office of the Cook County Public Guardian (Public Guardian) similarly took no position on the removal of appointed counsel but expressed support for the idea that attorneys in the ECC have training under the ECC "Team Model."

¶ 11 Adolf assured the court that he had attended a child and family team meeting two weeks earlier and planned to attend the next in three weeks. He argued the trial court would frustrate its own stated purpose of continuity by removing attorneys who had already begun to develop the necessary relationships. He also assured the court that the recent changes in representation related

to a "one time" personnel change in the Public Defender's Office and would not "result in continuous changes thereafter."

¶ 12    After Adolf finished his argument, the trial court vacated his appointment.

¶ 13                    *Respondent-Appellant Persure W. (Appeal No. 1-20-0399)*

¶ 14    The same day, a similar exchange took place regarding the appointment of Assistant Public Defender Maurice Holman, assigned to represent Persure W. The trial court planned "to vacate his appointment" because the Public Defender's Office had "asked different assistants to come in," disrupting the continuity meant to persist in the ECC. The trial court expressed its intent to appoint bar attorneys who had training in the ECC model.

¶ 15    Like Adolf, Holman registered "a number of objections." First, Holman told the trial court that his client told him that she wanted the Public Defender's Office to continue representing her. He pointed to the resources available in the child protection division of the Public Defender's Office and explained that the bar attorneys would not share those resources. Though the trial court expressed "concern" that Holman, and other assistants, had not "gone through the formal training" of the ECC court, Holman assured the trial court that assistants in the child protection division "are also trained in-house on the specialized Early Childhood Court."

¶ 16    As to this case, Holman told the court he had been working on the file "for over a month" and had been communicating with his client. He was prepared for the proceedings scheduled to take place that day. Holman had received training on child protection cases as well as ECC cases.

¶ 17    The State again took no position on vacating Holman's appointment but, as before, asked the court to take account of any delay in permanency being achieved for the minors. The Public

Guardian, like the State, took no position on vacating Holman's appointment but agreed with the court's views about the importance of training on the ECC model.

¶ 18    The trial court found that the "extensive resources" of the Public Defender's Office did not match the training undergone by the ECC team. Out of concern for continuity and integrity of the ECC program, the trial court vacated Holman's appointment.

¶ 19                    *Respondent-Appellant David S. (Appellant No. 1-20-0491)*

¶ 20    About two weeks after the court vacated the appointment of Romona J.'s and Persure W.'s counsel, the trial court heard the case of David S. Again, she informed counsel, this time Assistant Public Defender Carmen Rivera, that it "has been vacating the public defender" because assistants in the office "ha[d] not gone through the official trainings for the Early Childhood Court."

¶ 21    Rivera tendered an affidavit from David S. The affidavit indicated he was "very satisfied" with the representation that had been provided to him by the Public Defender's Office and he "want[ed] the Office to continue to represent [him]." The affidavit specifically named Rivera as his counsel of choice.

¶ 22    Like previous counsel, Rivera argued that the 32 attorneys in the child protection division of the Public Defender's Office had been trained in-house on the procedures in the ECC. Rivera explained she had tried many child protection cases, had "extensive training" in child protection court, and had been working on David S.'s case for more than a month.

¶ 23    Rivera also objected to the appointment of new counsel because it denied David S. the continuity that the court had "so praise[d]." The bar attorney, Rivera argued, had not met David S. and would not be familiar with the case's progress.

¶ 24    The trial court concluded:

"the statute on appointments of counsel indicates that the Court would appoint the Office of the Public Defender unless there's a good reason not to or other reason. And this Court has determined the training for early childhood so important that it's vital. And for that reason, with utmost respect, I will vacate your appointment today."

¶ 25 After the Public Defender filed its brief in this appeal, attorney Elizabeth Butler filed a motion in this court to intervene on behalf of David S. Butler had been assigned to the case after the trial court vacated the Rivera's appointment, and according to an affidavit included with Butler's motion, David S. did not know about this appeal and does not wish to have the Public Defender reappointed to his case. We allowed Butler's motion to intervene.

¶ 26 A few days later, David S. (represented by Butler) filed a motion to dismiss his appeal or, alternatively, affirm the trial court's order vacating the Public Defender's appointment. In the motion, Butler details her training on ECC proceedings and argues the only relief the Public Defender seeks—reappointment to David S.'s case—would be contrary to his present desire that Butler represent him. We ordered the motion taken with the case.

¶ 27                                         Analysis

¶ 28                            *Appeal Nos. 1-20-0377 and 1-20-0399*

¶ 29 The Public Defender, the Public Guardian, and the Cook County State's Attorney all agree the trial court erred in vacating the appointment of the assistant public defenders assigned to the respondents' cases. The three offices present variations on a single theme—the trial court's orders vacating the appointment of the Public Defender lacked legal authority and came on short notice with little opportunity to be heard. We agree. The Illinois Supreme Court rules expressly allow internal training at the Public Defender's Office to satisfy the requirements for representation in

child custody cases, and the record does not support the trial court's concerns about continuity of representation.

¶ 30    We review the trial court's decision to vacate the appointment of counsel for an abuse of discretion. *Macknin v. Macknin*, 404 Ill. App. 3d 520, 530 (2010). The Public Guardian argues that the deference we traditionally afford to the trial court when we consider whether it abused its discretion should be "lessened" because the court disqualified the appointed assistant public defenders without an evidentiary hearing or taking evidence. We need not opine on the Public Guardian's view of deference to the trial court because we find the court made an error of law, which is, by definition, an abuse of discretion. *Id.*

¶ 31    Our primary task is to determine the scope of the trial court's authority to disqualify the Public Defender based on the governing statutes and court rules. Traditional principles of statutory construction guide us. We apply the plain and ordinary meaning of the statutory text, resorting to other aids of construction where the text is ambiguous. *E.g.*, *People v. Glisson*, 202 Ill. 2d 499, 504-05 (2002). We will give independent meaning to all the words in the statute, declining to read in exceptions or conditions not found in the text. *Id.* at 505. We presume the drafters or legislation wanted to avoid absurd or inconvenient results. *Id.* The same principles governing statutory construction apply to the interpretation of Illinois Supreme Court Rules. *E.g.*, *People v. Roberts*, 214 Ill. 2d 106, 116 (2005).

¶ 32    The Juvenile Court Act of 1987 gives "the minor who is the subject of the proceeding and his [or her] parents, guardian, legal custodian or responsible relative who are parties respondent *** the right to be represented by counsel." 705 ILCS 405/1-5(1) (West 2018). If any of the parties cannot afford counsel, "the court shall appoint the Public Defender or such other counsel as the

case may require." *Id.* The Public Defender correctly argues that when the General Assembly uses "shall" it imposes a mandatory obligation. *People v. Robinson*, 217 Ill. 2d 43, 54 (2005). The Public Defender misses the mark, however, in arguing that the statutory language here means the trial court shall appoint *only* the Public Defender.

¶ 33    We confront a simple grammatical question: what is the object of the verb phrase "shall appoint?" Here there is a compound object—"the Public Defender" and "other counsel as the case may require," and both refer back to "shall appoint." In other words, the sentence in section 1-5(1) retains its same meaning if rewritten as "the court shall appoint the Public Defender or [shall appoint] such other counsel as the case may require." Indeed, the plain language of the statute requires the court to appoint counsel, but the court may choose between "the Public Defender" or "such other counsel as the case may require."

¶ 34    We do not agree with the Public Defender that the word "may" in the phrase "may require" means appointment of "only" the Public Defender and subordinates "such other counsel" to a secondary role. The plain language of the statute gives the trial court leeway to appoint counsel other than the Public Defender.

¶ 35    Here, the only reason the trial court gave for vacating the appointment of the Public Defender, pertained to its belief that the assistant public defenders had insufficient training in the ECC and their reassignment disrupted the continuity of representation. When it comes to qualifications of counsel in child custody cases specifically, the only authority we can find is Illinois Supreme Court Rule 906 (eff. Mar. 8, 2016), and that rule, by its terms, applies only to counsel appointed to represent the child in those cases (see Ill. S. Ct. R. 906(a) (eff. Mar. 8, 2016)). But even assuming the rule could be read to cover counsel representing all parties in child custody

cases, the qualifications the rule sets out can be satisfied by "in-house legal education classes" for "[a]ttorneys who work for governmental agencies." Ill. S. Ct. R. 906(c)(1)-(4) (eff. Mar. 8, 2016). Here, all three assistant public defenders informed the trial court they had received in-house training about handling cases in the ECC.

¶ 36    The parties do not cite, and we could not find, any other rule or order of the supreme court or the child protection division requiring additional specialized training for assistant public defenders assigned to the ECC. Absent legal authority to the contrary—particularly in light of the assistant public defenders' representations that they completed in-house training on ECC proceedings—the trial court's personal preference that attorneys have outside training fails as a proper basis on which to vacate the appointment of the Public Defender.

¶ 37    We respect the trial court's desire for continuity of representation in cases involving children, particularly children of tender ages. We find, however, that the record demonstrates otherwise. Romona J.'s attorney had been "working on [the case] for several months, speaking with [his] clients, reviewing records, attending child and family team meetings, participating in them." Similarly, Persure W.'s counsel had been working with her for "for over a month." Both counsel were prepared to litigate the case in a timely fashion, and no evidence suggests that the Public Defender's reassignment of assistants in the ECC had frustrated efforts at a timely disposition. Neither the State nor the Public Guardian make any arguments about undue delay.

¶ 38    As to Romona J. and Persure W., the trial court did not provide a legally cognizable basis for disqualifying the Public Defender as their counsel. That said, nothing in our decision should be read as foreclosing the possibility that cases may arise in which "such other counsel" may be

required. In appeal Nos. 1-20-0377 and 1-20-0399, we reverse the trial court's orders disqualifying the Public Defender and remand for further proceedings.

¶ 39                              *Appeal No. 1-20-0491*

¶ 40    While this appeal was pending, newly appointed counsel for David S.—Butler—moved to dismiss his appeal or affirm the trial court's order disqualifying the public defender. Counsel attached an affidavit from David. S. to her motion in which he averred he no longer wished to be represented by the Public Defender and wanted Butler to continue his representation. We dismiss David S.'s appeal of the trial court's disqualification of the Public Defender as moot.

¶ 41    Appeals are moot if it becomes "impossible for the reviewing court to grant effectual relief to the complaining party." *In re Commitment of Hernandez*, 239 Ill. 2d 195, 201 (2010). David S. has disavowed the only relief the Public Defender seeks on his behalf—reappointment of the Public Defender. The Juvenile Court Act of 1987 guarantees counsel to parents in proceedings under the act, and David S. has counsel standing ready and able to represent him.

¶ 42    We direct the clerk of the appellate court to issue the mandate *instanter*.

¶ 43    Nos. 1-20-0377 and 1-20-0399, Reversed and remanded.

¶ 44    No. 1-20-0491, Appeal dismissed.

---

**No. 1-20-0377**

---

| | |
|---|---|
| **Cite as:** | *In re K.S.*, 2020 IL App (1st) 200377 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 18-JA-701, 18-JA-808, 18-JA-918; 19-JA-605; the Hon. Patricia M. Martin, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Amy P. Campanelli, Public Defender, of Chicago (Aaron Goldstein, Assistant Public Defender, of counsel), for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Gina DiVito, Assistant State's Attorneys, of counsel), for the People. |
| | Charles P. Golbert, Public Guardian, of Chicago (Christopher J. Williams and Kass A. Plain, of counsel), guardian *ad litem*. |

---