2025 IL App (3d) 250033

Opinion filed May 2, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0033 Circuit No. 24-CF-2411 |
| JERMAINE NAHSHON BADIE, | ) ) ) | Honorable Ann Celine O'Hallaren Walsh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court, with opinion.
Presiding Justice Brennan and Justice Davenport concurred in the judgment and opinion.

_____

**OPINION**

¶ 1      Defendant, Jermaine Nahshon Badie, appeals from his pretrial detention, arguing that the Du Page County circuit court did not have the authority to hear the State's motion for relief and erred in ultimately granting the motion. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      Defendant was charged on October 30, 2024, with two Class X felonies—aggravated battery for discharging a machine gun or firearm with a silencer (720 ILCS 5/12-3.05(e)(5) (West 2022)) and unlawful possession of a loaded machine gun on his person (*id.* § 24-

1(a)(7)(i)). On October 31, the State filed a verified petition to deny pretrial release, alleging that defendant was charged with a nonprobationable offense and his release posed a real and present threat to the safety of the victim and the community under section 110-6.1(a)(1) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(1) (West 2022)).

¶ 4    The trial judge conducted a detention hearing on the same day the petition was filed, on defendant's first appearance before the court. Neither the State nor defendant called witnesses. The hearing was based only on the proffer of a factual basis and exhibits. The factual basis provided that on October 28, 2024, at approximately 8:48 p.m., officers responded to an apartment complex for reports that a man had been shot. Upon arriving at the scene, officers located the victim, Dylan Dahlbach, lying on the grass with a BB gun underneath him. Dahlbach sustained a gunshot wound to his chest and was transported to the hospital. Medical personnel determined that the bullet entered Dahlbach's chest, struck his lung, and exited through his back. Dahlbach was placed on a ventilator and was unable to give a statement. Three witnesses provided statements to the police. Alexander Amaya told officers that he lived in the apartment complex. That evening, Dahlbach had wanted to visit Amaya's residence, but Amaya told him not to, as there were four people present in his apartment that did not like Dahlbach. Dahlbach and his friends decided to go to Amaya's residence regardless. When Amaya told the individuals in his residence that Dahlbach was coming over, an individual named Charles handed defendant a firearm. When he saw defendant take the firearm, Amaya stated, "I don't want any of that."

¶ 5    When Dahlbach arrived at the apartment complex, Amaya met him outside, and they started arguing. Defendant was also outside and had a firearm in his waistband. Defendant stated, "nobody better jump in." Defendant then lifted his shirt to show the gun to Dahlbach. Defendant appeared tense and put his hand on his waistband. Amaya told defendant to calm down and heard

2

Dahlbach say something to the effect of "[W]here is my gun?" Amaya knew that Dahlbach sometimes carried a BB gun. Amaya heard a "a loud boom" and saw defendant shoot Dahlbach. Defendant then fled. Amaya stated that Dahlbach never had a gun in his hands, pointed a gun at anyone, or made any threats. Amaya positively identified defendant in a photograph lineup. Dahlbach's friends—T.Z., A.Z., and L.S.—largely corroborated Amaya's account and indicated that the shooter was a Black male with dreadlocks, wearing a tan or beige jacket and a ski mask.

¶ 6    Officers located defendant, matching the description of the shooter, in a parking lot. Later, surveillance video from a car dealership near where defendant was found showed defendant walking across the parking lot, behind a fence, and near a tree. Officers searched the area and located the firearm. Amaya, A.Z., and L.S. identified the firearm as the one defendant shot Dahlbach with. The firearm had a 30-round extended magazine, no serial number, threading for a silencer, and a switch to convert it to a fully automatic firearm, creating a machine gun. Upon inspection of the firearm, it was discovered that when defendant fired the weapon, there was a malfunction. The bullet exited the firearm, but the casing jammed. Had the malfunction not occurred, the entire magazine would have emptied. A National Integrated Ballistic Information Network hit indicated that the firearm was used in three shootings in Milwaukee.

¶ 7    In his statement to police, defendant initially indicated that he was at the mall and officers located him walking home. Later in the interview, defendant said, "you've got my prints, you got my hand, you got the gun, right?" Defendant then admitted that the firearm was his and that he kept it for protection. He further admitted to having the firearm on him that day, bringing it to the fight, shooting at Dahlbach, and dropping the firearm. However, defendant stated that Dahlbach pointed a gun at him first. A pretrial risk assessment indicated that defendant was a moderate risk.

3

¶ 8        In support of its petition, the State presented several exhibits, including photographs of the extended magazine and automatic firearm defendant used, and argued that defendant escalated the situation. The State maintained that defendant was dangerous and no conditions could mitigate the threat he posed, noting that GPS monitoring or home confinement would not prevent defendant from having contact with Dahlbach or obtaining firearms. Defense counsel argued that defendant was 18 years old and had strong ties to the community. Counsel stated that this was an isolated incident and asked for the least restrictive methods of confinement, such as home confinement or curfew.

¶ 9        The court found the State met its burden by clear and convincing evidence that defendant committed a detainable offense and posed a real and present threat. However, in considering whether there were conditions that could mitigate the threat defendant posed, the court emphasized that defendant was only charged with aggravated battery and unlawful use of a weapon, and it only considered those charges. In that context, the court noted that defendant did not bring the gun to the apartment complex, it was given to him when he arrived, and defendant's actions were "apparently in response to [Dahlbach's] request [for a gun.]" The court found there were conditions that could mitigate the threat defendant posed, considering "he is eighteen and has no criminal history and the unique nature and circumstances of the offense charged." The court ordered that defendant be affixed with a GPS monitoring device, have no contact or communication with Dahlbach, possess no firearms or controlled substances, and refrain from contacting any witnesses. The first appearance judge then assigned defendant to another courtroom and corresponding judge for any further proceedings.

¶ 10 On November 8, 2024, the State filed a motion for relief before the assigned judge, arguing that no conditions would mitigate the threat defendant posed. In the motion, the State asserted that:

"Defendant's behavior in this case, from putting on a ski mask to walk outside to watch someone else's fist fight and arming himself with an automatic weapon, to firing that weapon at a person and then fleeing the scene and calling an Uber, do not support the expectation that he will comply with any condition imposed by the Court."

¶ 11 A hearing was held on November 19, 2024. Defense counsel argued that the court did not have jurisdiction to consider the State's motion for relief, as it should have been heard in front of the original judge. The court noted that Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) does not indicate that the same judge that heard the initial petition must hear the motion for relief. Moreover, the court stated:

"Not only does the 604(h)2 not require that the same judge hear the motion for relief, after a defendant practically in this jurisdiction as it is in many jurisdictions, there is a First Appearance Court. Just like prior to the act[,] there was a bond court. There's a specific judge that's assigned there, and that judge made the determination in this particular case or in any case that that judge makes a determination of detention if the *** State chooses to file a petition [for] detention, and they adjudicate over that initial hearing. Then that case is assigned to a trial court.

*** I am the trial court that this particular defendant is assigned to, and there's nothing that speaks to the fact that this Court cannot review any rulings

5

that have been made in *** this particular case. In fact, it would be completely impractical if every single motion for relief in this county would have to go back to the original judge that heard the initial hearing as to whether or not the defendant would be detained or not. *** [A]ll these cases would not go then right back to the First Appearance Court judge every single time that there was a question or an issue with regard to motion for relief. And, in fact, the Pretrial Fairness Act requires that the Court must make a finding on each court date that continuing detention is necessary for the protection of any person or persons or the public and/or to prevent *** their willful flight from prosecution. To require the defendant or the State to have a motion for relief heard before the judge in First Appearance Court *** each time a motion is filed before the trial court is simply implausible." (Emphasis omitted.)

¶ 12    After arguments by the parties, the court granted the State's motion for relief. In doing so, the court stated that the issue was whether the first appearance judge "misapplied the law to specific articulable facts of the case to determine whether conditions of release imposed on the defendant could mitigate the threat to the alleged victim and the public." The court held that, although defendant was young and did not have a criminal history, the facts of the case were enough to show that there were no conditions to mitigate the threat. The court noted that defendant was the only one who said he saw Dahlbach holding a gun and that he lied to the police about his whereabouts that day. Given defendant's credibility issues, the court discounted his version of events. Moreover, the court emphasized that defendant had a motive based on previous issues with Dahlbach, brought a gun outside, wore a ski mask, inserted himself into Amaya's fight with Dahlbach, and showed the gun as a threat during the fight. The court further

6

noted that defendant shot a firearm in public at an apartment complex and then fled, hiding the gun as he did so. Regarding GPS monitoring, the court indicated that GPS would only reveal where defendant was located, not mitigate impending danger, and other conditions would not sufficiently mitigate any threat.

¶ 13 On November 26, 2024, defendant was indicted on two counts of aggravated battery (720 ILCS 5/12-3.05(e)(1), (5), (h) (West 2022)). Defendant was also charged with unlawful use of a weapon (*id.* § 24-1(a)(7)(i), (b)), aggravated discharge of a firearm (*id.* § 24-1.2(a)(2), (b)), and attempted first degree murder (*id.* §§ 8-4(a), (c)(1), 9-1(a)(1)).

¶ 14 Defendant filed a motion for relief on December 4, 2024, arguing that (1) the second judge lacked authority under Rule 604(h) to "reconsider" the order releasing defendant and (2) the court misapplied the law by entering a detention order where the State failed to carry its burden to prove that defendant must be detained. After a hearing, the court denied the motion.

¶ 15 II. ANALYSIS

¶ 16 A. Motions for Relief Under Rule 604(h)

¶ 17 On appeal, defendant has not filed a memorandum, and therefore, the only issues before us are those included in his motion for relief. Defendant's first argument therein is that the court did not have authority to hear the State's motion for relief under Rule 604(h) because the State's petition to detain was initially heard by a different judge.

¶ 18 Rule 604(h) states, in relevant part:

> "(1) Orders Appealable. An appeal may be taken to the Appellate Court from an interlocutory order of court entered under sections 110-5, 110-6, and 110-6.1 of the Code *** as follows:

(i) by the State and by the defendant from an order imposing conditions of pretrial release;

(ii) by the defendant from an order revoking pretrial release or by the State from an order denying a petition to revoke pretrial release;

(iii) by the defendant from an order denying pretrial release; or

(iv) by the State from an order denying a petition to deny pretrial release.

(2) Motion for Relief. As a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief. The trial court shall promptly hear and decide the motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(1), (2) (eff. Apr. 15, 2024).

¶ 19    When considering statutory construction issues, our primary objective is to ascertain and give effect to the intent of the legislature. *People v. Young*, 2011 IL 111886, ¶ 11. A statute's language is the most reliable indicator of legislative intent. *Id.* "To discern the plain meaning of statutory terms, it is appropriate for the reviewing court to consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it." *Id.* If the statutory language is clear and unambiguous, a reviewing court must apply the language as written, without resorting to other aids of statutory construction. *Id.* The same rules for statutory construction apply to the interpretation of supreme court rules. *In re K.S.*, 2020 IL App (1st) 200377, ¶ 31. "As with statutes, the interpretation of a supreme court rule presents a question of

law, which we review *de novo*." (Internal quotation marks omitted.) *People v. Gorss*, 2022 IL 126464, ¶ 10.

¶ 20　　　　As applied in this case, the clear and unambiguous language of Rule 604(h)(2) does not provide that the motion for relief must be heard in front of the same trial judge who heard the initial petition. Instead, the rule simply states that the motion should be presented "to the trial court." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). This language encompasses the circuit court as a whole, not a particular judge. Moreover, the pretrial release statute does not indicate that subsequent hearings must be held in front of the judge who heard the initial petition. For example, section 110-6.1(i-5) of the Code states: "At each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary ***." 725 ILCS 5/110-6.1(i-5) (West 2022). Further, regarding revocation of a defendant's pretrial release, section 110-6(a) of the Code states: "The court before which the previous felony matter or Class A misdemeanor is pending may revoke the defendant's pretrial release after a hearing." *Id.* § 110-6(a). Similar to the language of Rule 604(h), these statutory provisions do not state that the hearing must be held in front of the same judge who heard the initial petition but that it must be heard before *the court* in which the matter is pending. See *id.*

¶ 21　　　　Practically speaking, the initial detention hearing is often held on a defendant's first appearance before the court, as it was here. Most counties have a designated courtroom or judge that presides over first appearances before the cases are assigned to the courtroom or judge that will preside over subsequent proceedings in the case. Thus, taking the language as written, the commonsense application indicates that a revocation hearing would be held, not in front of the first appearance judge that heard the initial detention petition, but in front of the judge of the

9

courtroom the case was assigned after the first appearance. Had the legislature sought the same judge preside over all a defendant's pretrial detention matters, it would have said so.

¶ 22    To the extent defendant attempts to argue that section 110-6(a) mandates conducting a motion for relief hearing before the same trial judge who heard the initial petition by relying on *People v. Green*, 2024 IL App (1st) 240211, we reject his claim. Defendant misinterprets *Green* in two ways. First, the issue in *Green* was whether the statutory requirement that a hearing be held within 72 hours of the filing of the State's petition to revoke pretrial release was mandatory or directory. *Id.* ¶ 17. The court interpreted section 110-6(a) and decided that although it was mandatory, strict construction of the statute was impractical and did not achieve the purpose of the Act. *Id.* ¶ 21. The *Green* court also noted that section 110-6(a) requires that the revocation hearing will be conducted by the same trial judge who ordered the defendant's pretrial release. *Id.* ¶ 22. But the court, again, acknowledged that "[i]n some circumstances, like those presented here, it may be impossible for the hearing to comply with both statutory mandates." *Id.* Further, while *Green* may say the statute "mandates" that revocation hearings be conducted by the same judge (see *id.*), the statute simply states that the defendant "shall be transferred to *the court* before which the previous matter is pending" (emphasis added) (725 ILCS 5/110-6(a) (West 2022)). A hearing before the same *judge* is not required.

¶ 23    Second, *Green* involved a petition to revoke and the application of section 110-6(a), not a motion for relief and appellate jurisdiction under Rule 604(h)(2). Conducting a revocation hearing before the same judge who ordered defendant's pretrial release and is familiar with the original charge may be appropriate in a revocation proceeding. However, those concerns are not controlling when considering a motion for relief, which only raises issues as a prerequisite to appeal. Moreover, as noted in *Green*, requiring an initial appearance judge to hear all motions for

10

relief filed pursuant to Rule 604(h)(2) would be nonsensical and impractical for courts to accomplish. We therefore conclude that the trial court had authority to consider the State's motion for relief, despite the fact that the motion was heard by a different judge than the one who considered the initial detention petition.

¶ 24    In reaching this conclusion, we dismiss defendant's argument that allowing a different judge to hear a motion for relief amounts to "judge shopping." The State did not seek to substitute the judge or choose which judge heard the motion. Instead, the State filed its motion in front of the judge that had been assigned to the case following the first appearance hearing.

¶ 25    We find defendant's reliance on *People v. Taylor*, 50 Ill. 2d 136 (1971), and *People v. Williams*, 138 Ill. 2d 377 (1990), misplaced. Both cases concerned appealable suppression orders that the State did not appeal from and instead sought to relitigate in front of a different trial court judge. See *Taylor*, 50 Ill. 2d at 140; *Williams*, 138 Ill. 2d at 389-90. In this case, the State could not appeal from the order denying detention until after it filed a motion for relief. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). As noted in *Williams*, the rule in *Taylor* simply provides that

> "[a] suppression order may be an appealable order under our Rule 604(a)(1) [citation], and, if it is, the State must either appeal or not. Except for seeking timely reconsideration by the same or a successor judge of the court in which the order was entered [citation], the State 'cannot now have [the] order reviewed by another trial judge' and 'cannot [before such a judge] retry the issues therein decided' [citation]." *Williams*, 138 Ill. 2d at 389-90.

The rule is limited to appealable orders and is distinguishable from unappealable orders that are later modified by another judge. *Id.* at 391 (citing *Balciunas v. Duff*, 94 Ill. 2d 176 (1983)). In this case, the order denying detention was not an appealable order when the State filed its motion

11

for relief, and Rule 604(h)(2), which requires the State to file such a motion before initiating an appeal, does not dictate that it be filed before the same judge who heard the petition to detain.

¶ 26                                B. Granting of Petition to Deny Pretrial Release

¶ 27        In his motion for relief, defendant also argues that the second judge erred in granting the State's petition to deny pretrial release. Specifically, he claims the State failed to meet its burden of proving by clear and convincing evidence that he was a danger to the community and that no conditions could mitigate his risk. Regardless of whether the State filed the motion for relief before the appropriate judge, we review the court's decision to detain or release a defendant *de novo* where, as here, the detention hearing was conducted solely by way of proffer and exhibits and not live testimony. See *People v. Morgan*, 2025 IL 130626, ¶¶ 51, 54. Further, "a proper Rule 604(h)(2) hearing *** consist[s] of an examination of the State's evidence at the initial detention hearing and a determination of whether the State had met its burden of proof." *People v. Williams*, 2024 IL App (1st) 241013, ¶ 29.

¶ 28        Everyone charged with an offense is eligible for pretrial release, which may be denied only in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to any person, persons, or the community or is a flight risk; and (3) "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community *** or (ii) the defendant's willful flight." *Id.* § 110-6.1(e)(1)-(3).

12

¶ 29     Section 110-10(b) provides a list of pretrial conditions that may be imposed, including restrictions on out-of-state travel, reporting requirements, restraining orders as to certain people or places, home supervision with or without electronic monitoring, and "other reasonable conditions" as the least restrictive means to ensure compliance with the law. *Id.* § 110-10(b). When determining a defendant's dangerousness and the conditions of release, the statute provides additional factors the court can consider, such as the nature and circumstances of the charged offense, the weight of the evidence against the defendant, and the defendant's history and characteristics. *Id.* §§ 110-6.1(g), 110-5. The list is nonexhaustive, and no single factor is dispositive. See *id.*

¶ 30     Here, the court did not err by determining that defendant posed a real and present threat to the safety of the victim and the community generally. The nature and circumstances of the offense, evidence that defendant possessed and had access to a firearm, and defendant's admission to shooting Dahlbach indicate that defendant is dangerous. See *id.* § 110-6.1(g)(1), (4), (7). According to the State's proffer, defendant possessed a modified automatic firearm, put on a ski mask, and opened fire in a public area at an apartment complex. After striking Dahlbach with a bullet, defendant then fled and attempted to evade police. He also lacked credibility in that he was the only witness who said he saw Dahlbach holding a gun.

¶ 31     We also agree with the court's decision that no conditions could be imposed on defendant to mitigate the risk he poses to Dahlbach and the community. Though the evidence demonstrated that defendant had no criminal history and resided with his parents, the fact remains that defendant carried an automatic firearm for his protection and had issues with Dahlbach. Methods of home confinement or curfew, as suggested by defense, would do little to prevent defendant from confronting Dahlbach again. Further, GPS monitoring would likely not mitigate any threat

13

defendant presents to Dahlbach or the community, based on the reactive and permissive nature of the program. See 730 ILCS 5/5-8A-4 (West 2022) (supervisor verifies compliance or noncompliance after the fact and the participant is permitted at least two days of movement in the community per week). Accordingly, the State met its burden of showing that no condition or combination of conditions could adequately mitigate the threat defendant poses to the safety of the victim or the community.

¶ 32                                    III. CONCLUSION

¶ 33        The judgment of the circuit court of Du Page County is affirmed.

¶ 34        Affirmed.

14

*People v. Badie*, 2025 IL App (3d) 250033

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 24-CF-2411; the Hon. Ann Celine O'Hallaren Walsh, Judge, presiding. |
| **Attorneys for Appellant:** | Courtney L. Knippen, Dena M. Singer, and Jonathan S. Bedi, of Bedi & Singer, LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and William L. Browers, Assistant State's Attorneys, of counsel), for the People. |