2026 IL App (1st) 252671-U

No. 1-25-2671B

Order filed March 25, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 25 CR 13426 |
| v. | ) ) | |
| MONIQUE McCULLOUGH, | ) | Honorable |
| | ) | Ankur Srivastava, |
| Defendant-Appellant. | ) | Eulalia De La Rosa, |
| | ) | Judges, presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The defendant's appeal is dismissed for failing to comply with Illinois Supreme Court Rule 604(h)(2).

¶ 2    Defendant Monique McCullough appeals the circuit court's decision to detain her pending trial on nine felony charges of, *inter alia*, attempted first degree murder and aggravated discharge of a firearm. As she failed to file the requisite motion for relief in the trial court, as contemplated by Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024), we dismiss this appeal.

¶ 3                                      I. BACKGROUND

¶ 4    Following an October 18, 2025 incident where McCullough was alleged to have discharged mace and a firearm at a victim, the victim obtained an order of protection against McCullough.

McCullough subsequently surrendered her weapon to the Naperville Police Department on October 30, 2025, and was arrested. McCullough was charged with three counts of attempted murder and one count each of: aggravated discharge of a firearm, unlawful vehicular invasion, criminal damage to property ($10,000-$100,000), aggravated battery/use of deadly weapon, aggravated assault (discharge firearm), and mob action/force.

¶ 5    On November 1, 2025, the State filed a petition for pretrial detention hearing, pursuant to sections 110-2 and 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-2, 110-6.1 (West 2024)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] The petition alleged that McCullough committed an eligible offense (attempted murder and aggravated discharge of a firearm) as listed in section 110-6.1(a)(1), (a)(1.5), and (a)(7) of the Code and that she poses "a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case." Specifically, the State relayed that, "D discharged a firearm into the ground and then at V, striking the car that V was in." The petition further alleged that no combination of conditions could mitigate the risk McCullough poses.

¶ 6    That same day, the court held a detention hearing. A pretrial officer testified that McCullough scored a one out of six on the "new criminal activity scale" and a one out of six on the "failure to appear scale," and noted that her "score coincides with pretrial Level 3."

¶ 7    The State, proceeding by proffer, noted that McCullough and the victim were dating or had previously dated the same man ("witness"). McCullough called the victim on October 15, 2025, and threatened her.

---

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. *Raoul* lifted the stay of pretrial release provisions and set an effective date of September 18, 2023. *Id.* ¶ 52; Pub. Act 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023).

¶ 8    At approximately 3 a.m. on October 18, 2025, the victim drove to South Second Avenue in Maywood, Illinois to meet with the witness. She remained in her vehicle, conversing with the witness, who is the father of her child. McCullough arrived on the scene in a Mazda vehicle and began arguing with the witness. The victim believed McCullough to be intoxicated. McCullough then began arguing with the victim and "said she had something for the victim." As McCullough exited her vehicle, she displayed a handgun and aimed it at the victim's face. She then discharged the firearm twice in the direction of the victim. McCullough stowed the weapon, removed a can of mace, and maced the victim in the face. Two other women arrived on scene in an automobile and they, along with McCullough, began striking the victim's car. The victim fled the scene. After receiving a 911 call regarding fired gunshots, police officers arrived on scene and were met with two uncooperative individuals.

¶ 9    The victim drove to the Maywood Police Department at approximately 2 p.m. to report the incident. Law enforcement observed damage to the victim's car—including a bullet lodged in the front bumper. The damage to the victim's car was estimated to cost $13,643.63. The victim viewed a photographic array, identified McCullough as the offender, and filed an emergency order of protection. On October 30, 2025, McCullough reported to the Naperville Police Department to surrender her firearms and was thereafter taken into custody by Maywood police officers.

¶ 10    The State argued that the proof is evident McCullough committed the offense, where she was identified in a photo array, there was a corroborating 911 call, and there was bullet damage to the victim's car. McCullough is a threat to the victim, the State contended, where she repeatedly threatened the victim prior to the incident and then discharged a firearm at the victim. They noted their concern that McCullough has access to firearms (although conceded they had been surrendered) and the fact that this is McCullough's first arrest. Last, the State argued that no conditions can mitigate the risk McCullough poses, where the victim and McCullough have a

relationship "filled with animosity."

¶ 11        Defense counsel explained that McCullough has a 17-year-old child with the witness and they had recently rekindled their relationship. McCullough was unaware of the victim's relationship with the witness, but the victim was "irate" after discovering the witness and McCullough had reunited. The victim researched McCullough online, found her telephone number, and called her. McCullough did not call the victim. Defense tendered text messages to the State from the victim to the witness, wherein the victim allegedly made threats regarding unpaid child support and lamented their failed relationship. The victim purportedly visited the witness's home (where McCullough was staying) three times in one week, "banging on the door consistently." McCullough did not report this to the police because she was trying to let the witness handle the situation.

¶ 12        Counsel contended that, on October 18, 2025, the victim again arrived at the witness's home and began banging on the garage door with a hammer and knocked down the security camera. McCullough arrived at the residence as the witness exited his home and wrestled the hammer from the victim. The victim became upset at seeing McCullough, got into her car, and drove it "full speed ahead" towards McCullough. McCullough, who has a concealed carry permit, fired two warning shots in the air. McCullough's mother—whom McCullough had at some point called and notified of the situation—arrived at the residence as the victim was attempting to exit her vehicle. At this point, McCullough put her firearm away and "maced" the victim as she ran towards McCullough. The victim then returned to her vehicle and drove away, damaging multiple parked vehicles on the block. McCullough remained at the property, with her gun holstered, and explained the incident to law enforcement. Defense counsel noted that McCullough did not shoot the victim with the gun and noted "she could have easily shot her, if she's trying to kill her. [She] doesn't." McCullough voluntarily went to the police department to turn in her weapons.

McCullough was complying with the order of protection and is a law-abiding citizen, with no criminal background. She is the sole caretaker of her daughter and has steady employment. Defense counsel contended that McCullough merely fired a warning shot to protect herself from someone "driving full speed" at her. McCullough does not pose a danger, she argued, and could be put on electronic home monitoring (EHM) if released.

¶ 13    In rebuttal, the State noted that McCullough never called the police to report an attack, despite her claims that the victim drove a car directly at her. They highlighted the police reports which reflect that officers were "met with two uncooperative individuals" when they responded to the 911 call. The State questioned why the victim's car has a bullet hole if the shots were fired into the air. Defense counsel countered that there was no record of a bullet in the victim's bumper, and the State proffered information from two reports referencing bullet damage to the front bumper of the vehicle. Damage to the victim's driver's side door and visible shoe impressions on the sides of the vehicle were also referenced in the report.

¶ 14    The court noted the vast discrepancies in the parties' proffers and highlighted that the report of the bullet hole in the victim's bumper contradicts McCullough's claim she fired warning shots, and the shoe indents on the vehicle support the victim's account. Accordingly, the court mandated that McCullough be detained during the pendency of her trial. It entered a written detention order reflecting its findings and specifically noting that "the level of danger in this case is so extreme – defendant ambushing victim, an apparent romantic rival, and shooting at her twice – that no conditions available to this Court will be sufficient to protect the victim."

¶ 15    On December 2, 2025, defense counsel filed a "Motion to Vacate Detention Order and Release Defendant from Pretrial Detention," complete with six letters of support. McCullough argued that she does not present a real and present threat, she is not a flight risk, and she could be put on EHM.

¶ 16        On December 8, 2025, the court held a hearing on McCullough's motion. Defense counsel proffered information consistent with her November 1, 2025, proffer, arguing that after McCullough moved in with the witness, the victim was "threatening [the witness] constantly," and informing him "you're going to jail or someone else is going to jail." Counsel noted that the witness was willing to testify to the victim's actions and that other witnesses stated they have observed the victim being violent in the past. She claimed the victim called McCullough after the incident and threatened her. Additionally, counsel noted that McCullough had several family members in court supporting her and she could live with them if assigned to EHM.

¶ 17        The State proffered the facts of the instant case consistent with their November 1, 2025, proffer but added that the victim struck McCullough's Mazda as she attempted to leave following the incident. They noted that the victim's vehicle repair estimate stated there was damage from a bullet hole, corroborating the victim's account of the incident. The State reiterated that they did not believe EHM is sufficient due to the specific threat McCullough poses to the victim.

¶ 18        The court acknowledged McCullough's lack of background and her strong familial support. Nonetheless, it found that no conditions beyond continued detention can mitigate the real and present threat to the victim that McCullough presents. The court declined to reconsider all three prongs under the Act and instead relied on *People v. Thomas*, 2024 IL App (1st) 240479, in stating it was not required to make a determination whether or not the proof is evident or the presumption great that McCullough committed a detainable offense. Rather, the court considered if McCullough's continued detention was necessary; it found it was.

¶ 19        Accordingly, the court informed McCullough that she had a right to appeal her ruling but would first need to file a written motion for relief. Defense counsel noted she was "going to file a motion for relief" and inquired of the court if "when I file my motion for relief should I ask to review the first one, because you only reviewed the first 2 prongs here?" The court noted that it

6

was not presented with "enough of a change of circumstances here to warrant a change in her detention status." Defense counsel again replied that she would file a motion for relief. Following a further exchange, the court explained that the filed motion was not a "motion for relief," and asked counsel if she wished to amend the title of the filing. Counsel responded, "I could amend what I titled this. That doesn't change the facts. The title doesn't change the facts."

¶ 20　　　　After a brief discussion was held off the record, defense counsel requested to orally amend the title of the motion. The court then noted that, as the evidence supports the complaining witness's account, it would order McCullough's continued detention. The court made clear it was not reviewing "the initial prongs that the State has to meet at initial appearance court," and the hearing concluded. McCullough filed a notice of appeal without filing another motion in the circuit court.

¶ 21　　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 22　　　　On appeal, McCullough filed a memorandum arguing that the State failed to meet its burden to prove, by clear and convincing evidence, that (1) the proof is evident and the presumption great that she committed the offense of attempted first degree murder, (2) she poses a real and present threat to the safety of a specific person or persons, and (3) no conditions can mitigate the potential threat she poses to the complaining witness. The State disputes McCullough's argument and asserts that her continued detention was necessary. As an initial matter, however, the State argues that this appeal must be dismissed because McCullough's petition fails to comply with Rule 604(h)(2)'s "motion for relief" requirement. See Ill. S. Ct. R. 604(h)(2). Thus, we must first address the State's argument in support of dismissal.

¶ 23　　　　In doing so, it is necessary for us to "clarify the difference between what occurs at every court appearance by a defendant, as a matter of course, versus the litigation of a motion for relief to initiate the appellate process." *People v. Patterson*, 2025 IL App (1st) 250510, ¶ 10.

¶ 24    Pursuant to the Code, all persons charged with an offense are eligible for pretrial release before conviction. 725 ILCS 5/110-2(a) (West 2022). The court may deny pretrial release only upon a verified petition by the State and following a hearing. 725 ILCS 5/110-6.1(a) (West 2022).

¶ 25    Once a defendant has been detained, the court must reevaluate the defendant's status "at every subsequent court appearance to determine whether a change in status is warranted." *Patterson*, 2025 IL App (1st) 250510, ¶ 11; see 725 ILCS 5/110-6.1(i-5) (West 2024). A defendant may, but is not required to, file a written motion for pretrial release prior to such a hearing, articulating why continued detention is neither necessary nor appropriate. *Patterson*, 2025 IL App (1st) 250510, ¶ 16; see *People v. Tolbert*, 2025 IL App (1st) 251814-U, ¶ 10.[2]

¶ 26    When a defendant wishes to appeal a detention order, they "shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2). This motion fulfills a distinct procedural purpose, allowing the defendant to "identify errors in the circuit court's detention decision," giving the trial court a "chance to correct any errors and potentially change its ruling in the movant's favor," and crystallizing and framing the issues on appeal. *Patterson* 2025 IL App (1st) 250510, ¶¶ 18-19. Significantly, a "motion for relief will serve as the argument of the appellant on appeal." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (establishing that the motion for relief will serve as the appellant's argument on appeal, and allowing, but not requiring, the appellant to file an additional memorandum in support). "[A] proper Rule 604(h)(2) hearing *** would consist of an examination of the State's evidence at the initial detention hearing and a determination of whether the State had met its burden of proof." *People v. Williams*, 2024 IL App (1st) 241013, ¶ 29; see *People v. Badie*, 2025 IL App (3d) 250033, ¶ 27.

---

[2]Unpublished Rule 23 orders entered on January 1, 2021, or later "may be cited for persuasive purposes." Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025).

¶ 27    First, we must determine whether McCullough's petition, which she initially characterized as a "Motion to Vacate Detention Order and Release Defendant from Pretrial Detention," can be construed as a motion for relief pursuant to Rule 604(h)(2). The petition makes no reference to Rule 604(h)(2) but instead requests the court "vacate its order to detain," pursuant to 725 ILCS 5/110-6.1, 5/110-7.5, 5/110-5(e), and 5/110-10. The motion begins with a brief procedural history of the case, outlines the legislative history behind the abolishment of monetary bail, and describes the condition under which a defendant may be denied pretrial release. It then details that "at each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and describes the State's burden of proof. The motion then states that McCullough does not pose a real and present threat to the safety of anyone, nor is she a risk of willful flight, and states that "[i]f the court still has concerns about Ms. McCullough appearing for future court dates or engaging in criminal activity, Ms. McCullough could be placed on electronic monitoring."

¶ 28    Following arguments, the trial court explicitly stated it viewed McCullough's petition and argument as a motion to evaluate her continued detention status and not as a motion for relief. The court relied upon *Thomas*, 2024 IL App (1st) 240479, to support its view that it was not required to determine whether the proof was evident or the presumption great that McCullough committed a detainable offense. We agree with the trial court's characterization of McCullough's motion. The motion was akin to a motion for pretrial release, which may be filed prior to a continued detention hearing. The motion simply presented an argument as to why continued detention was inappropriate.

¶ 29    Subsequent to the court's ruling and resulting from a lengthy exchange with the trial court, McCullough renamed her motion a "Motion for Relief under 604H." However, the  motion does

not cite to Rule 604(h)(2), makes no challenge to the sufficiency of the evidence, and fails to point to any particular errors in the initial detention proceeding. We look to the substance of a motion, rather than its title, in determining the character of a filing. *People ex rel. Ryan v. City of W. Chicago*, 216 Ill. App. 3d 683, 688 (2d Dist. 1991) ("In determining the nature of a pleading or a motion, courts are not bound by the title given to the document by a party; instead, the substance of the document will be examined."). Here, neither the motion nor defense counsel's arguments pointed to errors made in the trial court at the initial detention proceeding, as contemplated by Rule 604(h)(2). Furthermore, defense counsel repeatedly informed the court that she intended to file a "motion for relief" with the court prior to seeking an appeal. No such motion was filed.

¶ 30        Where McCullough failed to satisfy the requirements of Rule 604(h)(2), this appeal must be dismissed. See *Patterson*, 2025 IL App (1st) 250510, ¶¶ 22-26; see also *People v. Kelly*, 2026 IL App (1st) 252046-U; *Tolbert*, 2025 IL App (1st) 251814-U, ¶13; *People v. Pitts*, 2025 IL App (1st) 242107-U, ¶ 1; *People v. Duffy*, 2026 IL App (1st) 252181-U, ¶ 1.[3] As Rule 604(h) permits an appeal of a detention order at any point prior to a conviction, McCullough remains free to appeal the disposition of any future Rule 604(h)(2) motion. See Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2025) ("After disposition of its motion for relief in the trial court, a party may initiate an appeal by filing a notice of appeal in the circuit court at any time prior to conviction.").

¶ 31        As a final note, McCullough's argument that the court's detention ruling amounted to reversible error, as alleged in her memorandum, was neither included in her motion before the trial court nor was it raised before the court at hearing. Therefore, we deem the issue—presented for the first time in McCullough's memorandum—waived. See Ill. S. Ct. R. 604(h)(2); see also *People*

---

[3] Unpublished Rule 23 orders entered on January 1, 2021, or later "may be cited for persuasive purposes." Ill. S. Ct. R. 23(e)(1).

*v. Burries*, 2025 IL App (5th) 241033, ¶ 17 (where memorandum argued grounds for relief not contained in the motion for relief, the issue was deemed waived).

¶ 32                                    III. CONCLUSION

¶ 33        For the reasons stated, we dismiss the appeal.

¶ 34        Appeal dismissed.